478

DARNET REALTY CORP., Landlord, *v.* ERICK OBODA, Tenant.

DARNET REALTY CORP., Landlord, *v.* KURT SCHWARTZ, Tenant.

DARNET REALTY CORP., Landlord, *v.* PATRICK MCLAUGHLIN, Tenant.

DARNET REALTY CORP., Landlord, *v.* IDA PETERSON, Tenant.

DARNET REALTY CORP., Landlord, *v.* MARY O'BRIEN, Tenant.

DARNET REALTY CORP., Landlord, *v.* SIGMUND LAUFER, Tenant.

DARNET REALTY CORP., Landlord, *v.* JOSEPH SANTO, Tenant.

DARNET REALTY CORP., Landlord, *v.* ANNA M. DROEGMOELLER, Tenant.

DARNET REALTY CORP., Landlord, *v.* RICHARD W. FRANK et al., Tenants.

DARNET REALTY CORP., Landlord, *v.* MARGARET SHAUGHNESSY, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, December 15, 1950.

*Sylvan D. Freeman* for landlord.

*Ellis J. Meyerson* for tenants.

SCHWEITZER, J. Ten summary proceedings were brought by the landlord to recover rent due from each of the tenants for the month of August, 1950, predicated upon the maximum rent under the New York State Residential Rent Law of 1950

(L. 1946, ch. 274, as amd. by L. 1950, ch. 250), and the amounts of arrears allegedly due under certain orders of the Office of the Housing Expediter granting increases to the landlord in the case of seven tenants, pursuant to the provisions of paragraph (1) of subdivision (a) of section 5 (major capital improvements), and clause (i) of paragraph (8) of subdivision (a) of section 5 (subletting), of the Controlled Housing Rent Regulations for the New York City Defense-Rental Area promulgated by the Housing Expediter pursuant to the Housing and Rent Act of 1947, as amended. (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*) In the case of three tenants, the order of the Office of the Housing Expediter related only to an increase granted to the landlord pursuant to paragraph (1) of subdivision (a) of section 5; i. e., major capital improvements. In nine cases, the orders were issued on November 23, 1949, effective August 15, 1949. In the case of the tenant Oboda, the order was issued January 16, 1950, effective December 20, 1949.

The court has taken this case under advisement pursuant to a stipulation furnished by counsel and the record of certain concessions made by respective counsel with respect to all ten proceedings. The landlord contends that the maximum rent for the period subsequent to May 1, 1950, is that prescribed in each of the respective orders of the Housing Expediter and predicates its claim upon the provisions of paragraph (a) of subdivision 1 of section 4 of the New York State Residential Rent Law of 1950 and the provisions of subdivision 1 of section 21 of the Rent and Eviction Regulations promulgated pursuant thereto. The tenants maintain that the increases are barred by the State law.

Section 4 of the State law provides: " *General powers and duties of the commission.* 1.(a) At the time this act shall become effective, the commission shall establish maximum rents for housing accommodations which shall be the same as those prescribed on March first, nineteen hundred fifty, pursuant to the federal housing and rent act of nineteen hundred forty-seven, as amended, or local laws specified in chapter one of the laws of nineteen hundred fifty. Where there were different maximum rentals prescribed pursuant to such laws on March first, nineteen hundred fifty, the maximum rental established hereunder shall be the same as that prescribed pursuant to the local laws specified in chapter one of the laws of nineteen hundred fifty; provided, however, that where the rent paid on such date does not reflect any adjustment which was granted subsequent to March first, nineteen hundred forty-nine, pur-

suant to the provisions of the federal housing and rent act of nineteen hundred forty-seven, as amended, because of the provision by the landlord of new or additional services or facilities to which the tenant has agreed, the maximum rent for such housing accommodations shall be increased by the amount of such adjustment.''

Subdivision 1 of section 21 of the regulations is similarly worded and with respect thereto, the State Administrator has issued its official opinions which have a direct bearing on the issues involved in all of these proceedings. Administrator's Opinion No. 12 provides as follows:

'' Section 21(1) — *Alternate Order Based Upon Additional Occupants.* A housing accommodation had a maximum rent of $50 a month. Prior to March 1, 1950, an order was issued by the Office of the Housing Expediter which permitted the landlord to charge an additional $5 per month because of one additional sub-tenant and $2.50 per month for each additional sub-tenant. What is the effect of this order under the regulations?

'' An adjustment based upon an increase in sub-tenants or in occupants is considered to be an adjustment granted because of an increase in the service or facilities provided with the housing accommodation. Under section 21(1) of the Regulations, the varying rents established by the order remain in effect. Just so long as the additional sub-tenant or additional occupants remain in possession the landlord may collect whatever increase was granted by the terms of the order. Should the additional sub-tenant or the additional occupants vacate, the landlord ceases to have the right to collect the increase granted because of their presence, and may only collect the lower amount. Should there be a dispute between the parties as to whether the additional sub-tenant or the additional occupants are still in possession, the local court may determine this factual question.'' (N. Y. L. J., June 23, 1950, p. 2228, col. 2.)

Administrator's Opinion No. 24 provides as follows:

'' Section 21(1) — *Major Capital Improvement as Increased Services or Facilities.* On November 1, 1949, an adjustment was granted by the OHE increasing the maximum rent of a housing accommodation within the City of New York by reason of a major capital improvement (Section 5(a)(1) of the Federal Regulation), from $50.00 to $60.00 per month. What is the maximum rent under the Rent and Eviction Regulations?

" The maximum rent is $60.00 per month. A major capital improvement under the Federal Regulations is considered as ' new or additional services or facilities to which the tenant then in possession had agreed, either expressedly or impliedly ' within the purview of Paragraph (b) of Section 21(1) of the Regulations. This would also apply to situations arising under Section 33(1)."

Unless clearly erroneous and arbitrary, these administrator's opinions should be given great weight particularly when issued with respect to his regulations. (*Yakus* v. *United States,* 321 U. S. 414; *Gates* v. *Woods,* 169 F. 2d 440; *Woods* v. *Durr,* 176 F. 2d 273; *Federal Security Administrator* v. *Quaker Oats Co.,* 318 U. S. 218, 228; *Brewster* v. *Gage,* 280 U. S. 327; *Matter of Marburg* v. *Cole,* 286 N. Y. 202, 212.)

The tenants do not challenge the administrator's opinions, but object to their applicability, because of their claim that there was no consent either express or implied to the new or additional services provided for by the landlord. It is the tenants' position that they objected strenuously and exhausted all of their rights of appeal from the orders granting the increases.

Insofar as the increases are based upon the provisions of clause (i) of paragraph (8) of subdivision (a) of section 5 of the Federal Rent Regulations (subletting), it is claimed that each of the tenants is deemed to have consented to such increased services by the mere exercise of the right to sublet. The record will reveal that the tenants have stipulated in the seven cases in which increases have been granted on the grounds of subletting, that such condition persists and that subtenants reside in the apartment for which each of the tenants receives a financial consideration. To this extent, therefore, the increases granted by the Office of Housing Expediter should be reflected in the maximum rent on and after May 1, 1950, and the court so rules. (See *Domur Realty Corp.* v. *Goldberg,* N. Y. L. J., Dec. 14, 1950, p. 1585, col. 4.)

The real problem presented for the court's consideration is the issue as to whether or not the landlord is entitled to the increases granted by the Office of Housing Expediter predicated upon paragraph (1) of subdivision (a) of section 5 of the Federal Rent Regulations based upon the installation of major capital improvements. These increases are allegedly based on the " provision by the landlord of new or additional services or facilities " and are an " adjustment which was granted * * * pursuant to the provisions of the federal housing and

rent act of nineteen hundred forty-seven, as amended ''. (State Residential Rent Law, § 4, subd. 1, par. [a].)

In the instant case, the major capital improvement consisted of various items: e.g., conversion from a manually operated elevator to an automatic elevator, the conversion of the central heating system from coal fuel to oil fuel, the furnishing to each of the tenants of a modern six-cubic-foot refrigerator instead of an antiquated four-cubic-foot refrigerator, the conversion of the electric current in the building from D.C. to A.C., the caulking of all windows, the waterproofing of exterior walls, and the installation of individual letter boxes and door chimes.

Patently the conversion from a manually operated elevator to an automatic elevator nowise affects the beneficial use of the tenants' premises and actually represents a detriment to the tenants insofar as it deprives them of '' live services ''. It is primarily designed to decrease the operating cost of the building, with a concomitant increase in its value.

Similarly, the conversion of the central heating system from coal fuel to oil fuel was designed to benefit the landlord alone, without in any wise representing a new or additional service or facility to the tenant.

On the other hand, the landlord did furnish to each of the tenants a modern six-cubic-foot refrigerator instead of an antiquated four-cubic-foot refrigerator, and altered the electric current in the building from D.C. to A.C., both of which items conceivably do represent new or additional services or facilities provided by the landlord. It may fairly be deduced, therefore, that at least in part the increases granted by the Office of Housing Expediter come within the provisions of section 4 of the State law. Since the law places the exclusive right with the State administrator to increase or decrease rentals because of an increase or decrease in service, it is apparent that this court does not have the power to apportion the increase in conformance with what this court believes represents an increase in the services or facilities afforded to the tenants. That is in the exclusive province of the State administrator and each of the tenants may, by proper petition, pursuant to the provisions of section 36 of the Rent and Eviction Regulations, make application for a decrease, if so advised.

In Opinion No. 24 quoted above, the State Rent Administrator stated that a major capital improvement under the Federal Regulations is considered new or additional services or facilities. The order issued by the Office of Housing Expediter determined that these improvements were collectively a major

capital improvement under the Federal regulations. Whether the major capital improvement made by this landlord constitutes, in effect, an increase in services and equipment, as contemplated by the New York State Residential Rent Law of 1950, is a matter within the sole jurisdiction of the State Rent Administrator.

In Opinion No. 21, the State Rent Administrator declared:

" *Section 36 — Order Issued by OHE between March 1, 1949, and March 1, 1950, Based upon Additional Services and Facilities.* A housing accommodation within the City of New York had a maximum rent of $50 per month on March 1, 1949. On January 10, 1950, an order was issued by the Office of the Housing Expediter increasing the maximum rent to $60 per month. This order was based upon both an increase in services and equipment and an increase in operating costs. What is the maximum rent?'

" The local rent administrator will determine the maximum rent pursuant to section 36 of the regulations. This order will be issued on the basis of the maximum rent in effect on March 1, 1949, plus the increase in rental value because of the increase in services or facilities to which the tenant had agreed."

If there is any defense at all to the landlord's claim for the increase based upon the orders granted under paragraph (1) of subdivision (a) of section 5 (major capital improvement), it must be on the ground that the tenants have not agreed, either expressly or impliedly, to the new or additional services or facilities which the landlord furnished. The tenants' contention is that they have vigorously opposed the application filed by the landlord before the Office of Housing Expediter even to the point of appealing the action of the area rent director directly to the United States Expediter, Tighe E. Wood, in Washington, but without success. The difficulty with the tenants' position, however, is their failure to distinguish between their opposition to the increase of rent and to the furnishing of the services and equipment. Paragraph (a) of subdivision 1 of section 4 of the New York State Residential Rent Law of 1950 and subdivision 1 of section 21 of the Rent Regulations promulgated by the State Rent Administrator provide that the maximum rent for housing accommodations is increased by the amount of the adjustment previously granted by the Office of the Housing Expediter for new or additional services or facilities when the tenant in possession had agreed, either expressly or impliedly, to the furnishing of the new or additional services or facilities. There can be no question

but that the tenants did agree to accept the new refrigerators and the A.C. current. Having agreed to accept at least part of the increased services, which constitute the so-called major capital improvement, upon which the retroactive order increasing the rent was based, the tenants then come within the purview of section 4 of the State law and the Administrator's Opinion No. 24.

As already stated, this court is without power to proportion the consent and vary the rent accordingly, since this may only be done, as already stated, by the State Rent Administrator.

In each of the ten summary proceedings, the petitioner is entitled to possession of the premises by reason of the tenants' defaults in payment of the August, 1950, rent as fixed by the orders of the Office of Housing Expediter, and a judgment for all rent due from the effective date of the OHE orders to the date of the petitions. (*Berman* v. *Jarvis*, N. Y. L. J., Nov. 28, 1950, p. 1339, col. 7; *Almin Realty Corp.* v. *Livingston*, N. Y. L. J., Dec. 8, 1950, p. 1504, col. 4.)

Final order for the landlord in each of the respective petitions awarding the landlord possession of the premises described therein, upon the grounds that each of the tenants had failed to pay the rent for the month of August, 1950, and judgment is awarded to the landlord for the said amount, and in addition thereto for the amount of arrears, in such sums as are demanded in each of the respective petitions, together with costs and judgment is directed accordingly.