In the Matter of OTTO MARBURG, Respondent, against
ERNEST E. COLE, as Commissioner of Education of the
State of New York, et al., Appellants.

Argued June 10, 1941; decided July 29, 1941.

*Charles A. Brind, Jr.,* and *Joseph Lipsky* for appellants. Respondent is not of conceded eminence and authority in his profession. (*People ex rel. Williams* v. *Dayton,* 55 N. Y. 367; *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543; *Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *Matter of City of New York,* 217 N. Y. 1; *Bullock* v. *Cooley,* 225 N. Y. 566; *Story* v. *Craig,* 231 N. Y. 33; *Town of Amherst* v. *County of Erie,* 260 N. Y. 361; *Kings County Lighting Co.* v. *City of New York,* 176 App. Div. 175; *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp,* 193 App. Div. 413; *Matter of Dick* v. *Murphy,* 219 App. Div. 141; *People ex rel. Lewis* v. *Graves,* 219 App. Div. 233; *Gemenez* v. *Great Atlantic & Pacific Tea Co.,* 242 App. Div. 485; *Matter of Deth* v. *Castimore,* 245 App. Div. 156; *Price*

v. *Mullen*, 247 App. Div. 528.) The application of respondent is addressed to the discretion of the Commissioner of Education and the Board of Regents. (*Matter of Levi* v. *Regents*, 256 App. Div. 444; 281 N. Y. 627; *Matter of Bailey* v. *Board of Regents*, 261 App. Div. 64; *People ex rel. Comstock* v. *City of Syracuse*, 59 Hun, 258; 128 N. Y. 632; *Gilmore* v. *City of Utica*, 55 Hun, 514; 121 N. Y. 561; *Malcolm* v. *Rogers*, 5 Cow. 188; *People ex rel. Rota* v. *Baker*, 136 App. Div. 7; *People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; *People ex rel. Goldenkoff* v. *Albany Law School*, 198 App. Div. 460; *People ex rel. Peixotto* v. *Board of Education*, 212 N. Y. 463; *Matter of Davis* v. *Sexton*, 211 App. Div. 233.)

*Benjamin F. Feinberg* and *Clyde A. Lewis* for respondent. The Commissioner of Education and the Board of Regents cannot exercise in an arbitrary, unfair or capricious manner the power delegated to them by the Legislature in section 1259 of the Education Law (Cons. Laws, ch. 16). (*People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387; *People ex rel. Comstock* v. *Mayor*, 59 Hun, 258; 128 N. Y. 632; *Matter of Schwab* v. *McElligott*, 282 N. Y. 182; *Matter of Small* v. *Moss*, 277 N. Y. 501; 279 N. Y. 288; *Matter of Erlanger* v. *Regents*, 256 App. Div. 444; *Matter of Siegel* v. *Mangan*, 258 App. Div. 448; 283 N. Y. 557; *Matter of DeLuca* v. *Byrne*, 168 Misc. Rep. 841; 256 App. Div. 859.)

FINCH, J. The petitioner in this proceeding, a licensed Austrian physician, has submitted to the appellants, the Commissioner of Education and the Board of Regents, an application for the indorsement of his Austrian license to practice medicine, without examination, pursuant to the power granted to them by the provisions of section 1259 of the Education Law (Cons. Laws, ch. 16). The question presented for decision is whether the refusal by the appellants to indorse petitioner's license is arbitrary, capricious or unreasonable so as to constitute an abuse of the discretion conferred upon appellants by the Legislature. This petition, brought pursuant to article 78 of the Civil Practice Act, requests that the court review the determi-

nation of the appellants and issue an order directing appellants to indorse petitioner's medical license so as to enable him to practice medicine in the State of New York without the necessity of taking a licensing examination.

The petitioner, Otto Marburg, was licensed to practice medicine by the Austrian government in 1899. Upon coming to this country as a refugee he made the aforesaid application for indorsement of his foreign license pursuant to what he claims is his right under section 1259 of the Education Law. He filed with the Board of Regents such documents as he could procure from abroad as to his preliminary and professional qualifications but was unable, because of the unsettled conditions in Germany, to produce any certificate of maturity indicating his completion of a gymnasium course nor evidence of his attendance at medical school so as to furnish the Board with information concerning his scholastic standing. At the same time he also filed with appellants verified statements as to his practice and experience together with letters from six American doctors who recommended that his application be granted. He also filed proof that he has declared his intention to become an American citizen. While his application was pending, the Board accorded petitioner an opportunity to appear in person and by counsel before a committee of the Board. Subsequently the appellants held a meeting at which the application was denied under section 1259 upon the ground that the petitioner had not in their opinion reached a position of conceded eminence and authority in the medical profession. Thereafter, the petitioner filed a supplemental application, which application upon consideration by the Board was again denied for the same reason. This latter denial, at the instance of petitioner's counsel, was amended after further consideration on the merits to read that the application was denied pursuant to section 1259 of the Education Law whereas it had formerly read that it was denied pursuant to section 51 of that law.

Thereafter petitioner-respondent instituted this proceeding. Special Term annulled the decision of appellants

and directed them to indorse respondent's Austrian license, thereby opening the door for him to practice his profession in this State without submitting to a medical licensing examination. Upon appeal to the Appellate Division, the order was affirmed, one justice dissenting. The Commissioner of Education and the Board of Regents now appeal to this court.

Subject to the requirements and procedure set forth in detail by the Legislature, the administration of admittance to all professions which are regulated by license in this State, except the profession of the law, has been committed into the hands of the Board of Regents. As the late Judge JOHN F. O'BRIEN has said in an opinion written for this court, the Board of Regents is the " statutory guardian of the [Educational] policies of the State * * *." (*Matter of Dr. Bloom Dentist, Inc.,* v. *Cruise,* 259 N. Y. 358, 363.)

In order to protect the health and provide for the welfare of the citizens of the State, the Legislature in the exercise of the police power of the State, has enacted laws requiring a certain standard of learning and training of those who undertake to preserve or repair the human body. Thus until he has been licensed by the proper authorities, no person has an absolute, unqualified or vested right to practice medicine or surgery. The methods by which such license may be obtained are clearly and concisely set forth by the Education Law and provide that licenses may be obtained by citizens of this State only after a rigorous course of study, and after the successful participation in a licensing examination designed to test their fitness. (Education Law, §§ 1256, 1257.) In the case of a person not a citizen of this State, the Education Law provides two methods by which he may be admitted to the practice of medicine besides the method pursued by petitioner. Thus section 51 of the Education Law provides that the Regents may indorse a license issued by a foreign State or country " upon satisfactory evidence that the requirements for the issuance of such license were substantially the equivalent of

the requirements in force in this state when such license was issued, and that the applicant has been in the lawful and reputable practice of his profession for a period of not less than five years prior to his making application;" and section 1256 provides that any person who is a citizen of the United States or who has declared his intention to become such citizen may take a licensing examination provided he has completed the preliminary educational requirements. Petitioner has made no application under either of these provisions.

After providing the foregoing methods for licensing physicians and surgeons, the Legislature further provided in section 1259 that " The commissioner of education may *in his discretion* on the approval of the board of regents indorse a license or diploma of a physician from another state, or country, provided the applicant has met all the preliminary and professional qualifications required for earning a license on examination in this state, has been in reputable practice for a period of ten years, and has *reached a position of conceded eminence and authority in his profession.*" (Italics added.) It is the interpretation of this provision by the Commissioner of Education and the Board of Regents that we are asked to review in the case at bar, since this is the method by which petitioner has sought to obtain entrance into the practice of medicine in the State of New York.

As bearing on the issue of whether the Commissioner of Education and the Board of Regents have acted arbitrarily and unreasonably in refusing this petitioner a license without calling upon him to take the ordinary medical licensing examination and placing him in the class of the four outstanding persons of conceded eminence to whom this honor has heretofore been accorded, it may not be amiss to call attention to the liberality with which the Legislature in New York State, and in turn, the Regents, have acted in granting medical licenses to non-citizens of this State. No State in the Union, and no foreign State or country has been as liberal in this respect as has the State of New York. On the other hand, only on exceedingly rare occasions are

physicians from the State of New York enabled to secure a license to practice medicine in Europe or in South America. New York State in 1939 issued 497 licenses to graduates of schools outside of the United States. Pennsylvania issued 25, Illinois 80, Ohio 65, Indiana 6, Iowa 8, Missouri 6, and Massachusetts 66. Many States have never issued such a license. New York State in 1940 admitted to the practice of medicine 557 graduates of schools located outside of the United States. Of the 1,054 graduates of foreign medical schools admitted to practice medicine in the State of New York after examination in 1939 and 1940, the vast majority are persons who were born in foreign countries and came to this country during the last several years. The foregoing facts show that the many general allegations of arbitrariness and unreasonableness imputed to the Commissioner of Education and the Board of Regents in this record are wholly without foundation.

In view of this liberal policy toward non-citizens under sections 51 and 1256, it was not arbitrary for the Commissioner of Education and the Board of Regents to adopt a standard of unique and outstanding service as an interpretation of the power conferred upon them by section 1259.

The statute under consideration expressly invests the Commissioner of Education and the Board of Regents with a very wide discretion, the due exercise of which the courts do not have the power to disturb. Nor do the courts have the power to substitute their judgment in place of the judgment of the properly delegated administrative officials. Thus in the absence of clear and convincing proof that the discretion of the Board of Regents has been exercised arbitrarily, unfairly or capriciously, the courts will not interfere. (*Matter of Erlanger* v. *Regents of University of State of New York,* 256 App. Div. 444; *People ex rel. Harris* v. *Commissioners of Land Office,* 149 N. Y. 26; *People ex rel. Wooster* v. *Maher,* 141 N. Y. 330, 337; *Matter of Levi* v. *Regents,* 256 App. Div. 244; affd., 281 N. Y. 627.)

Construing section 1259 as conferring upon them the right to indorse the license of outstanding men in the medical world as a privilege and honor to the recipient, the Commissioner of Education and the Board of Regents have exercised the broad discretion conferred upon them with great caution. Since this power was created in 1918, only four persons have been licensed under this section. In the case of each of the persons so singularly honored, the position of eminence and authority which he had attained in the medical profession was beyond question. Thus these persons and their qualifications for this honor are:

Dr. Bela Schick, license indorsed in 1923, discoverer of the "Schick Test for Determining Susceptibility to Diphtheria."

Dr. Benjamin Philip Watson, license indorsed in 1927, full professor of gynecology and obstetrics at the University of Toronto, Canada, from 1912 to 1922, and called to a full professorship of gynecology and obstetrics by Columbia University Medical School and the directorship of Sloane Hospital for Women in 1926.

Dr. George Hoyt Whipple, license indorsed in 1935, recipient in 1934 of the Nobel Prize in Medicine and co-discoverer of the cause and cure for pernicious anemia.

Dr. Manfred Sakel, license indorsed in 1939, the originator of the so-called insulin shock treatment for dementia praecox or schizophrenia.

Since three out of four of these persons have received their high position in the medical world because of original discoveries which they have made in their respective fields of medicine, there is ample evidence in this record to sustain the contention urged by the appellants in the case at bar that in interpreting the broad discretion conferred upon them by the standard, " a position of conceded eminence and authority in [the medical] profession," they have adopted a rigid objective test that the eminence required by the statute is obtained only by an outstanding original contribution in some one field of medicine.

Only in the case of Dr. Benjamin Philip Watson, who was admitted in 1927, does the record show that this test has not been satisfied. In his case the recent appointments which he had received at Columbia University and at The Sloane Hospital for Women were of sufficient importance to allow the Regents to make an exception within their discretion where they were satisfied that he ranked among the few outstanding men in his profession as evidenced by universal recognition and outstanding appointments in this State.

In the case at bar, after an oral hearing and after petitioner's application had been before them for consideration upon three separate occasions, appellants have come to the determination that the eminence of this applicant does not satisfy the standard required by the statute as it has been interpreted by them in the past. It is this determination which we are asked to declare to be arbitrary, unfair and capricious upon this record. It is our opinion that such is not the case.

It is not claimed here by petitioner, nor does the record show, that this petitioner is responsible for any outstanding original contribution to any field of medicine. Thus, if the eminence of petitioner is in any way to satisfy the high degree of eminence which has been set as a prerequisite for the indorsement of a medical license, it must be shown that his eminence in the field of neurology is so great that it can be said to be arbitrary, unfair or capricious for appellants to have refused to make an exception to the general standard in his case.

A careful examination of the record in the case at bar reveals that such is not the case. The record shows that petitioner had an enviable record as the Director of the Neurological Institute at the University of Vienna from 1919 to 1938, that he was in active practice in Vienna from 1905 to 1938, and that he has published about two hundred scientific papers and books written in his native German tongue as well as being accorded membership in the American Neurological Society. Upon his enforced emigration to

America, Dr. Marburg has continued his career and has received an appointment as a Clinical Professor of Neurology at Columbia University and as Research Neuropathologist at the Montefiore Hospital. The letters from his friends, former students and associates in the field of neurology clearly show that he has attained their esteem and respect as a medical teacher and practitioner. This evidence, while it is impressive, does not sustain the contention that appellants must make an exception to their general standard in Dr. Marburg's case because their refusal to be satisfied that he ranks among the few outstanding men in his profession as evidenced by universal recognition and outstanding appointments to positions of high responsibility in this State is arbitrary, unfair or capricious. The language and the reasoning which was applied in *Matter of Levi* v. *Regents* (256 App. Div. 444, p. 447; affd., 281 N. Y. 627) to section 51 of the Education Law is equally applicable to section 1259: " This section [§ 51] was only intended by the Legislature to apply to exceptional cases where the merit of the applicant is clearly established to the satisfaction of the Regents. The burden of proof is upon the applicant." In the case at bar neither were appellants satisfied that the evidence of his eminence in his profession introduced by Dr. Marburg proved that they should make an exception to their general standard in his case, nor was this evidence so overwhelming that we can say as a matter of law that their refusal to make such an exception was arbitrary, unfair or capricious. It follows that in the case at bar the refusal by appellants to indorse petitioner's medical license was not an abuse of their discretion. Since the Board of Regents has determined that Dr. Marburg has not shown that he is of equal eminence with any of the other four persons who have been licensed pursuant to this section, that determination is binding upon us.

Petitioner does not allege, nor is there any evidence to support a claim, that the standard which has been adopted by appellants is arbitrary or unreasonable. The law is well settled that it is not always necessary that license

legislation prescribe a specific rule of action. Where it is difficult or impractical for the Legislature to lay down a definite, comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials. (*New York ex rel. Lieberman* v. *Van De Carr*, 199 U. S. 552, affg. 175 N. Y. 440.) Where the administrative agency has adopted a standard as an interpretation of the broad powers granted to it by the statute, we may declare such a standard invalid only in the event that it is so lacking in reason for its promulgation that it is essentially arbitrary. (Cf. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78, 79; *Borden's Farm Products Co.* v. *Baldwin*, 293 U. S. 194, 209, 210; *Metropolitan Casualty Ins. Co.* v. *Brownell*, 294 U. S. 580, 584; *United States* v. *Carolene Products Co.*, 304 U. S. 144, 152; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416, 429.)

In view of the liberality accorded by New York State to practitioners of other States pursuant to sections 51 and 1256 of the Education Law, as well as the numerous applications made by non-citizens to practice medicine in New York, the interpretation of the powers confided to them by the Legislature through the provisions of section 1259 is not unreasonable. (Cf. *Matter of Levi* v. *Regents*, 256 App. Div. 444; affd., 281 N. Y. 627.) Thus in the case at bar, where the Board of Regents has interpreted the words " conceded eminence and authority in his profession " to mean an outstanding original contribution to a certain field of medicine or standing among the first few men of his profession, as evidenced by universal recognition and outstanding appointments to positions of high responsibility in the State, such interpretation cannot be said as a matter of law to be unreasonable or arbitrary.

The petitioner places great reliance upon this appeal upon two letters which were written to him by the Director of the Division of Professional Education and the Associate Commissioner of Education respectively, as showing an inclination on the part of the Board of Regents to dismiss summarily his application. Neither of these letters shows

any animosity toward this particular petitioner, but are merely declarations of a well-settled policy on the part of the Board of Regents in regard to the indorsement of medical licenses. On the other hand, the record as a whole shows that these officials aided the petitioner in every possible way to present his petition to the Board of Regents in the proper form.

The concurring opinion of the Appellate Division referred to and characterized as " dirty business " what it describes as an attempt by the appellants to entrap the petitioner by sending a " stool-pigeon " to him for treatment. Such a charge against the authorities administering the Education Law of this State is without warrant in the record. It is the duty of the Executive Secretary of. Professional Conduct to investigate all and any charges which might be made. by any citizen against any person who is practicing medicine in this State. The report which is contained in the record is more naturally and more plausibly explained as a routine investigation under the Medical Practices Act than as an attempt to " entrap " the petitioner in a breach of professional ethics for the purpose of defeating this application as alleged by the petition and apparently believed by the Appellate Division.

Success in this proceeding, wherein the performance of an alleged official duty is sought to be enforced, requires of the petitioner that he establish a clear legal right to the remedy he has chosen. (*Matter of Stracquadanio* v. *Dept. of Health*, 285 N. Y. 93, 95, 96.) From the language of section 1259, which informs the Commissioner of Education that he " may in his discretion " indorse a medical license upon the approval of the Board of Regents where the applicant " has reached a position of conceded eminence and authority in his profession," it appears that the power granted is more a power to confer a privilege and does not create an absolute right in an applicant. This is the interpretation which has been placed upon this power by the administrative officials. It follows that where the action of the appellants involved a refusal to exercise such dis-

cretionary power, no order to compel the exercise of the power will lie except in the case where it is clearly shown that the refusal is arbitrary, unfair or capricious. Since there is no evidence in the record of the case at bar which would sustain a finding that the refusal to exercise the discretionary power conferred upon appellants by section 1259 of the Education Law was arbitrary, unfair or capricious, the courts below should not have interfered with such lawful exercise of discretion by the Board of Regents.

It follows that the orders should be reversed and the proceeding dismissed, without costs.

DESMOND, J. (dissenting). If petitioner had submitted to the Regents only letters from " friends, former students and associates " showing " that he had attained their respect and esteem as a medical teacher and practitioner," he would of course have no case at all. What he did submit was evidence from a number of American physicians, each of unquestioned eminence, that he was " the leading neuropathologist of Europe; " that " people flocked to him from every country in Europe; " that his name was " one of the most important in Europe; " that there is " no greater figure in the medical world; " that " almost every neurologist the world over had studied under him; " that he has the " respect of the world-wide medical profession " and is " unquestionably the most prominent of recent emigres," and had been the teacher of most of the prominent neurologists of America. None of this is disputed in any way whatever. The opinions of these physicians who thus certify to petitioner's eminence are not assailed. Indeed, in view of the positions held by them in their profession, successful assault would be impossible. As against the sufficiency of this proof, defendants now assert that petitioner has failed to meet a standard, unrevealed till now, which limits the coverage of the words of the statute: " position of conceded eminence and authority in his profession " to persons who have made original discoveries in the field of

medicine. We need not now decide whether such a limitation would be arbitrary, since respondents themselves show that not all of the persons whose licenses they have indorsed under section 1259 have made any such discoveries. In other words, there is no showing of the adoption of any standard other than the plain language of the statute. When, by a wealth of proof unanswered and presumably unanswerable, petitioner showed his " conceded eminence and authority " defendants went far outside the bounds of their broad discretion in denying his application. We are not here letting down any bars or making possible any great inrush of emigre physicians. We are merely applying the plain words of the statute in one of the very rare situations in which it can apply.

The order should be affirmed.

LOUGHRAN, RIPPEY, LEWIS and CONWAY, JJ., concur with FINCH, J.; DESMOND, J., dissents in opinion in which LEHMAN, Ch. J., concurs.

Orders reversed, etc.