Heffernan, J.
This is a proceeding under article 78 of the Civil Practice Act, in the nature of mandamus, to compel the appellant to restore to petitioner his medical license which he forfeited upon his conviction of a felony.
On June 25,1925, petitioner was licensed to practice medicine in this State. Thereafter he practiced his profession in.Brooklyn and in Queens county.
On June 25, 1937, after a trial by jury, he was convicted in the Queens County Court of a felony. The offense was an illegal abortion which resulted in the death of his patient. The judgment of conviction was unanimously affirmed by the Appellate Division of the Supreme Court, Second Department (256 App. Div. 1097). Subsequently and on December 30, 1938, appellant revoked and canceled petitioner’s medical license.
Following his conviction petitioner was sentenced to imprisonment in Sing Sing State Prison under an indeterminate sentence the maximum of such imprisonment being four years and the minimum being two years.
On October 14, 1938, petitioner was released from prison on parole. Since 1938 he has resided with his family in Saratoga Springs and since 1942 he has been employed in a clerical capacity in a manufacturing plant.
On December 8,1942, petitioner received a pardon from Governor Poletti. The pardon, however, was not predicated on the ground that petitioner was innocent of the crime for which he had been convicted.
In January, 1943, petitioner applied to appellant for the restoration of his license and after an informal hearing the application was denied on March 19, 1943.
In May, 1945, petitioner again sought to have his license restored and again after an informal hearing that application was denied on June 16, 1945, The proceeding before us has to do only with the latter denial.
In both petitions it is alleged that petitioner was innocent of the crime charged, that he was unjustly convicted on circumstantial evidence and that he was found guilty due largely to unfortunate altercations between his attorney and the trial judge.
*372 Annexed to each petition are letters of recommendation from kindly disposed persons in various walks o£ life as to petitioner’s good character and standing since the expiration of Ms sentence. In addition to these letters the assistant district attorney who prosecuted the charge against petitioner and the judge who presided at his trial wrote appellant that if its investigation disclosed that petitioner was worthy of having Ms license restored they had no objection.
Subsequently to the denial of his second application petitioner applied to the Supreme Court to review appellant’s determination. That application was made in accordance with section 1251 of the Education Law, the pertinent provisions of which are: “ If a person convicted of a felony is subsequently pardoned by the governor * * * the regents may, in their discretion, on application of such person, and on the submission to them of satisfactory evidence, restore to such person the right to practice medicine in this state.”
Nowhere in the petition is it alleged that petitioner was not accorded a full and fair hearing by appellant.
Appellant filed a verified answer to the petition disclosing the reasons for its action.
Petitioner’s claim is that appellant, in denying his application acted arbitrarily, capriciously and unfairly and that its determination is autocratic and dictatorial.
After a hearing the Special Term granted petitioner’s application and from that determination appellant has come to this court.
Prom the memorandum written by the learned justice in granting petitioner’s application it is quite obvious that he was impressed by the contention of petitioner that he was not guilty of the crime wMch resulted in the forfeiture of his license. Apparently he concluded that the proof resulting in petitioner’s conviction “ was purely circumstantial evidence and that most of the circumstantial evidence was merely suspicious ”. According to the memorandum he examined the evidence “ in order to arrive at a conclusion whether or not there was any malice or unfairness which prompted the Board in refusing to restore the petitioner’s license to practice medicine.”
The question of the guilt or innocence of petitioner was not an issue before the Special Term and is not an issue before us. We are bound to assume that the evidence on the trial established his guilt beyond a reasonable doubt. A jury so found and that finding was unanimously approved by a court of co-ordinate jurisdiction with our own. That judgment may not be attacked *373 collaterally. Evidently petitioner is aware of that fact because in his application he said: “ The "question now, however, is not whether I was innocent or guilty of the crime charged, but whether the record herein and my conduct since I came out of prison justifies the restoration of my medical license.”
In passing upon petitioner’s application the Regents exercise a discretion committed to them by the Legislature. The mere fact that petitioner served his sentence and was pardoned by the Governor does not confer a right to have his license restored. The burden is not cast upon the Regents to establish by proof that petitioner’s license should not be restored. Petitioner has the affirmative. Upon him is placed the burden, not merely of “ application ” but of “ submission to them of satisfactory evidence ’ ’, so ineluctable in its implications that it would compel affirmative action from a board which has “discretion” to restore or to refuse to restore. Refusal to restore a license is like a refusal to certify a doctor on grounds of “ eminence and authority ” (Matter of Marburg v. Cole, 286 N. Y. 202), or refusal of a doctor’s license from another State or country said to have “ substantially the equivalent of the. requirements in force in this State ” (Matter of Erlanger v. Regents of University of State, 256 App. Div. 444, affd. sub nom. Matter of Levi v. Regents of University of State, 281 N. Y. 627).
In dealing with another section of the Education Law where discretion is conferred upon the Board of Regents this court in the Erlang er case {supra) said: “ The power herein granted is a limited one, remedial in its nature, and must be exercised by the Regents with caution * * *. This section was only intended by the Legislature to apply to exceptional cases where the merit of the applicant is clearly established to the satisfaction of the Regents. The burden of proof is upon the applicant.. * * * The rule is firmly established that the judiciary will not interfere with executive officers in the performance of duties which are discretionary in their nature or.involve the exercise of judgment. In the statute under consideration the law reposes discretion in the Regents and not in the courts. We may, not say on the record presented to us that the members of the Board of Regents have abused that discretion or that their action is arbitrary, unfair or capricious. Certainly petitioners, on whom the burden rests, have utterly failed to submit proof to that effect. The courts may not control the discretion of the Board of Regents.” (Pp. 447, 451.)
What we said, in the Erlanger case applies with equal force to the facts in the case now before us.
*374 On the record before us our power of review is limited to a consideration of the single question whether the action of the Board of Regents, in denying petitioner’s application is arbitrary, unfair or capricious. It is for him to prove, and not for the Regents to disprove, that fact. Apparently the petitioner and the Special Term were laboring under the illusion that appellant must submit proof justifying its action.
Let us examine the record to ascertain just what proof it contains which would warrant the courts in coercing the Board of Regents to restore petitioner’s license. We shall assume that he has lived within the letter of the law since his release from prison. We accept at face value the commendatory letters which accompanied petitioner’s application. Does such a record, ipso facto, make it mandatory on the part of appellant to restore the license? In such a case is it thereby deprived of the discretion which the Legislature entrusted to it and to it alone? We think not. If, in this instance, the sinner is to be forgiven, then absolution must come from the Regents and not from the courts. In passing. upon the merits of the application the Regents had the right to take into consideration the fact that the applicant had not only violated the traditions of an honorable profession but had committed a heinous crime which brought death to his patient. To readmit him to practice would surely lower the standards of a great profession which year by year renews in conduct and in speech the pledge and promise of Hippocrates.
The relation of physician and patient is of such a confidential and serious nature that not only the skill but also the moral character of the physician who visits our home when darkened with the shadow of disease and death is of paramount importance and hence the Regents have a duty to be vigilant in protecting the citizens of the State against incompetent, unscrupulous, unworthy and ignorant practitioners. It ’ is extremely essential that only persons of good character should be licensed to practice. The object sought is the protection of the home of the sick and distressed from the intrusion therein, in a professional character, of vicious and unprincipled persons — . persons destitute of moral sensibilities.
The inscription upon the monument erected to Pasteur — “ To cure sometimes, to relieve often, to comfort always ” — epitomizes the duty and the opportunity of the physician steeped in the lore of the divine art of healing.
We have the right to rely upon the State, through the intervention of the Board of Regents, to see that only those who are *375 worthy are permitted to enter the sacred portals and that those. who have brought dishonor on the profession are driven from its ranks.
The order appealed from should be reversed on the law and facts, the application denied and the petition dismissed, but without costs.