Sydney F. Foster, J.
Petitioners, who are members of the faculty of the New York City Community College of Applied Arts and Sciences, move for an order, pursuant to article 78, CPLR, vacating resolution 63-208 of the Board of Trustees of the State University of New York on the ground that such resolution is illegal, arbitrary, capricious and contrary to public policy.
*240 There are really two resolutions involved. On June 13, 1963 the respondent board adopted the following resolution 63-134: ‘ ‘ Resolved that Resolution 60-51 adopted by the Board of. Trustees on May 20, 1960, be, and hereby is, rescinded and that a policy whereby no member of the administrative staff or faculty of any state-operated university or college in the State University of New York may be appointed to the chief administrative position of that same institution be, and hereby is, adopted.”
On September 12, 1963 the respondent board adopted this resolution 63-4208: “Resolved that the policy established by Resolution 63-134 of this Board dated June 13, 1963 apply to the approval of this Board of appointment of community college presidents.”
The petition herein alleges that the Board of Trustees of the New York City Community College desires to appoint as president of that institution one who is now a member of the same institution’s faculty or administrative staff. Petitioners also allege that they are parties aggrieved by such resolutions since they, as members of the college’s staff, are excluded from consideration for the office of president of the college, notwithstanding their individual abilities and qualifications.
The respondent board moves to dismiss the petition on the ground that it is insufficient in law in that it does not state facts sufficient to entitle the petitioners to any relief. For the purposes of this motion the allegations of fact in the petition are deemed admitted, but this principle is not so important in this proceeding for the allegations of fact are largely matters of record. The conclusions stated, which are not admitted, are the decisive elements of the controversy.
Section 355 of the Education Law vests in the respondent Board of Trustees very broad powers concerning the appointment of the head of any statutory or contract college, as may be seen from the following language:
“Powers and duties of trustees — administrative functions
“ 1. Subject to the provisions of the plan or general revision thereof proposed by the state university trustees as approved by the regents pursuant to section two hundred thirty-seven of this chapter, the state university trustees shall be responsible for: # * *
‘ ‘ e. The approval of the appointment of the head of each statutory or contract college and community college by the respective boards of trustees or other governing bodies of such institutions.”
*241 It should be noted that the statute provides no limitations, or sets any restrictive standards, as to the power of approval to be exercised by the Board of Trustees of the State University over the appointment of the head of a Community College. It was the evident intent of the Legislature that the exercise of such approval should rest in the sound discretion of such board. There can be no doubt that, in the exercise of such discretion, the board had power to establish a policy to guide the administration of a far-flung State college system, providing of course that such policy is not arbitrary or capricious. The policy set forth in the resolutions under attack renders members of the faculty of an institution ineligible to become president of such institution, but it does not disqualify a faculty member from becoming the head of another institution. Petitioners contend that this is arbitrary because it ignores the abilities and qualifications of a faculty member to head the institution of which he is a staff member.
However there is another side to the coin. A rule or policy is not arbitrary if any reasonable basis can be envisaged to support it. Here the respondent board could conclude, within the exercise of fair discretion, that since the head of a college occupies an administrative position he should not be subjected to possible jealous factions in the faculty under him, or perhaps disloyalty from those with whom he has lately associated. The whole issue is one of educational administration, and the courts will not substitute their judgment for that exercised by the officials to whom administrative power has been delegated by the Legislature (Matter of Marburg v. Cole, 286 N. Y. 202).
Petitioners cite section 6206-a of the Education Law in support of a contention that the legislature intended appointments to the head of the New York City Community College of Applied Arts and Sciences might be made from faculty members. This section however deals only with tenure and service credits. Motion to dismiss granted, without costs.