In the Matter of VAN CORTLAND ASSOCIATES, Appellant, v. HORTENSE W. GABEL, as New York City Rent and Rehabilitation Administrator, Respondent, and DOROTHY FEUER et al., Being the Tenants Residing at Premises 3951–57 Gouverneur Avenue, The Bronx, Intervenors-Respondents.

First Department, May 14, 1964.

*Albert W. Fribourg* of counsel (*Louis M. Fribourg* with him on the brief; *Fribourg & Fribourg,* attorneys), for appellant.

*William E. Rosen* of counsel (*Beatrice Shainswit,* attorney), for respondent.

*Barney Rosenstein* for intervenors-respondents.

*Per Curiam.* Petitioner challenges, by way of an article 78 proceeding, a determination of the City Rent Administrator denying petitioner's application for rent increases on the basis of hardship. Special Term dismissed the petition on the merits, on the ground that the petition fails to show that respondent's action was arbitrary or capricious.

The application for increase of the maximum rents was made pursuant to City Rent and Rehabilitation Law (Administrative Code of City of New York, § Y51–5.0) which provides for granting such increases where the property yields a net annual return of less than 6% of the value of the property. The section provides, in subdivision g (par. [1], subpar. [a], cl. [1]), that the value of the property is to be determined by its current assessed value, except that a different determination may be made where there has been a bona fide sale of the property after March 15, 1958 (subd. g, par. [1], subpar. [a], cl. [1], subcl. [ii]). A bona

fide sale is one at arm's length on normal financing terms, at a readily ascertainable price, and excludes such transactions as forced sales, exchanges and the like. As to "normal financing terms", the statute provides that respondent shall give due consideration to the following factors: (a) ratio of cash received by the seller to the sales price and the annual gross income; (b) total amount of mortgages as compared with the assessed valuation; (c) ratio of the sales price to the annual gross income, considering in this connection prior rent increases given on this basis; (d) deferred amortization on purchase-money mortgages or assignment of such mortgages at a discount; and (e) any other facts which might have a bearing on financing.

It would appear that whether the cost price or the assessed value is to be used as the base figure for calculating the landlord's return is discretionary with the respondent. However, the very purpose of the statutory provisions indicates that the discretion is far from absolute. It could hardly have been the legislative intent to grant relief only in the situation where the assessed value supplied a ground, and to allow respondent to add exceptions at will, even where the will was confined by the remaining statutory limitations. Rather, the purpose was to grant relief where the value of the property warranted it. And the value would be the purchase price in such instances as the landlord could show that the price was the true indication of value. The landlord makes such a showing when he establishes a bona fide sale uninfluenced by the disqualifying factors set out in the statute and free from abnormal financing. As to the latter, finite criteria are not set out in the statute. The statute merely sets out the factors to be considered. These factors are set out in terms of ratios. It is left to respondent to determine what ratios are normal and then, applying them to the facts in the particular sale, to determine whether the over-all picture indicates normal financing or the reverse. A delegation of such authority is entirely proper (*Matter of Marburg* v. *Cole,* 286 N. Y. 202).

A buyer may make such a small cash investment, or his interest in the property may be so tenuous that it indicates that speculation rather than investment induced the price paid. Financing producing either result would be abnormal. The statute allows the respondent to reject the purchase price without actually finding that the financing does bring about one of the situations referred to, allowing respondent to draw that conclusion from a finding that one or more of the criteria are not met. This would be because deviations from the criteria tend to establish such situations. However, this does not absolve respondent from

making a determination on the ultimate question of abnormality. And in order to determine whether that conclusion is advised or arbitrary, it would have to be known what deviations the respondent relied on and the weight given to them.

While it does not appear that any of the foregoing principles is questioned here, the parties are not in accord in their particular application in the light of the procedures adopted by respondent. There is no statutory requirement that respondent take proof in each or in any application as to what is normal financing. Presumably respondent would know this and the discretion vested in the office would imply a degree of expertness in the field. It is evidently the legislative contemplation that the Administrator would apply that expertness, and for the court to require proof and findings would not only be in excess of statutory requirement but would impose a burden on respondent's office beyond what was either useful or feasible. The situation is not similar to a departmental trial where the authority gains its knowledge of the facts from the record. Here the Administrator should not be required to prove to himself in each instance what he already knows.

On the other hand, the court must, upon a proper application, determine whether the Administrator has acted reasonably or arbitrarily. And this is impossible unless the court has some way of knowing not only what the Administrator determined but how that determination was arrived at. It is the Administrator's practice to provide a report which states, in the instances where abnormal financing is found, the respects in which the statutory criteria are not met. But, as pointed out, this involves a determination by the Administrator of what ratio is normal. As to certain of these, the ratio applied by the Administrator may be so well known and accepted in the real estate field that nothing would be needed to support it. An instance would be the use of a 20% ratio of cash to purchase price. In other instances the actual ratio established in the transaction may be such as to establish its abnormality without further proof or, by deduction alone, it could be demonstrated that it violates the standards set by the statute. An example of the former would be where, by financing, the actual cash expended would be recouped by the gross return within a few months; and of the latter where the building could not be made to show a net return without a very large increase over increases already obtained.

This leaves, however, many situations where the bare promulgation of the ratio cannot be evaluated by the court. Where the ratio is unsupported either by factual basis or by a showing that any greater or lesser ratio must result in an extraordinary

situation, its propriety cannot be determined. In the absence of adequate challenge it could well be assumed that even such a finding reflected the relevant real estate practice. But the assumption cannot survive supported denials of its accuracy.

When an issue is fairly presented as to whether the ratio revealed by the facts accords with what is usually done in financing the purchase of like buildings, or the particular situation does not tend to show that the transaction is so speculative that it is not a bona fide investment, respondent must justify the conclusion.

Here the sales price was rejected by the Administrator because the mortgages exceeded the assessment; because the sales price was 8.07 times the annual gross income; and because amortization was deferred for two years on a purchase-money second mortgage. As to these, none falls within the categories of what might be called absolutes or prima facie absolutes. As to the ratio of mortgages to assessments, the respondent has apparently fixed the test of abnormality at the point where the mortgages exceed the assessment. Petitioner has shown that in certain types of buildings in certain areas this does not accord with the existing situation. Furthermore, the Administrator has in certain instances found the financing to be normal where such a condition existed (*Matter of Edwards* v. *Herman,* 17 A D 2d 185). As regards ratio of earnings to purchase price, the exact ratio respondent claims to be evidence of abnormality is not stated, but petitioner has shown that ratios closely approximating the one found in this case have not been deemed abnormal by respondent. Lastly, the respondent has fixed one year as the normal limit of deferred amortization, and this also is contested as not representing a practice so uniform that a two-year deferment should be considered abnormal. Here, also, a protest opinion from respondent stated that a two-year amortization is usual in the current market (see protest opinion, Record on Appeal, *Matter of Edwards* v. *Herman, supra*). Furthermore, respondent has not stated which of these deviations from the ratios she has fixed has led to the conclusion of abnormal financing, nor why it has produced that effect.

The order dismissing the petition should be reversed, without costs and the matter remanded to respondent for further proceedings in accord with this opinion.

BOTEIN, P. J., BREITEL, RABIN, STEUER and BASTOW, JJ., concur.

Order, entered on February 20, 1963, unanimously reversed, without costs, and the matter remanded to respondent New York City Rent and Rehabilitation Administrator for further proceedings in accord with the opinion *Per Curiam* filed herein.