John L. Larkin, J.
This is a petition brought on by order to show cause against the Civil Service Commission of the State of New York and the Department of Civil Service. It seeks an order directing the respondents to
1. Strike certain material hereafter set forth from their examination announcement and,
2. Enjoining respondents from making any appointments based on the aforesaid examination other than by procedure set forth in subdivision 1 of section 61 of Civil Service Law.
The petitioners herein filed on December 18, 1970 an application to take the New York State Professional Careers Test pursuant to an announcement made by New York State Department of Civil Service.
The announcement contained general information as to salary range, qualifications and the following notice: “In order that New York State programs be truly responsive to all of the people of New York State and effectively relate to the changing problems of the State, it is essential that minority group members participate in the management of State programs in administrative and supervisory roles. Therefore, in evaluating the education and experience of a candidate for certain positions filled through this examination, the individual’s total life experience, as well as formal training, may be considered as a valuable asset to job performance. In such cases, preference for appointment may be given to individuals who are successful in the examination and who have recognisable identification.with Black or Spanish-speaking minority communities.” (Italics supplied).
On January 29,1971, petitioners commenced this action.
On March 27, 1971, petitioners took the examination but as of the date of the instant argument, had not received a score.
In the answer to the petition, the respondents, by the Attorney-General, set up several defenses:
First: That the petitioners lack standing to bring the action
Second: That the action is premature
Third: That the petition fails to allege facts sufficient to entitle the petitioners to relief.
*592 These three defenses have heretofore been decided in the instant case by Mr. Justice Hunt (Special Term, Albany, Feb. 26, 1971, No. 25).
The disposition of those defenses brings squarely into issue the act of the Civil Service Commission in proclaiming “ preference for appointment may be given to individuals who are successful in the examination and who have recognizable identification with Black .or Spanish-speaking minority communities.”
The petitioners contend that such language is a preference on the basis of race and ethnic background and is violative of article V of the New York Constitution and sections 6, 44, 50 and 61 of the New York Civil Service Law and further violates the equal protection clause of the Federal Constitution.
The respondents ’ position is that ‘1 ethnic identification ’ ’ may be one of the tests relating to the merit and fitness of the candidate. Briefly stated, the respondents’ contention is that section 50 of the Civil Service Law authorizes the respondents to set minimum qualifications, provide for competitive tests, and requires the applicant to set forth information in regard to his background, experience and qualifications. Ethnic identification may be a very important factor touching on background and experience and, as such, properly a minimum qualification for the position sought, in the view of the commission.
Section 60 of the Civil Service Law requires the department to certify an eligible list of persons most nearly appropriate for the position to be filled. It is the respondents ’ position that in so doing, all facets of the examination process must be considered, including the test of ‘ ‘ minimum qualifications ’ ’.
In a judicial review of the decision of a public agency, the sole consideration for the court is
1) whether the act reviewed is within the statutory authority of the agency, and
2) if it is, whether the decision within the frame of authority is arbitrary. (Matter of Marburg v. Cole, 286 N. Y. 202.)
Section 6 of article V of the New York State Constitution mandates that: ‘ ‘ Appointments and promotions in the civil service of the state * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ”.
There is no showing here that competitive exams are impractical, nor are the positions sought by the petitioners in the exempt class.
The veterans’ preference is not in point in the matter. The veterans ’ preference has been approved by the voters; indeed. *593 it is constitutionally mandated (Art. V, § 6); its application is specific; its quantity fixed. In the instant case, an absolute preference may be given by administrative direction only. But the respondents do not claim that their authority for such administrative decisions rests on the veterans’ preference. The respondents cite as support for their acts Matter of Council of Supervisory Assns. v. Board of Educ. of City of N. Y. (23 N Y 2d 458 [1969]). In that case, the Board of Education of the City of New York created a new position of Principal, Demonstration Elementary School. The skills sought included a “knowledge and relationship with disadvantaged communities, the cultural level there, etc. ’ ’
The board declared this position to be a new position; temporary and experimental and made appointments thereto on the basis of the applicant’s “knowledge and relationship with disadvantaged communities, and of the cultural level there, etc.”
The Court of Appeals pointed out that this was a new position, with new qualifications, on an experimental basis and pointed out that the temporary list should continue only until a competitive test is established. There was no such preference as is set out in the instant matter. But the Court of Appeals, fearful of the impact of their decision on other civil service questions, explicitly stated (p. 469): “The fear has been expressed that to sustain the board in this case will break down the merit system in the civil service and impair the rights to appointment and promotion of those on the established lists.
“ This decision will have no such consequences. It is limited to a well-recognized power to create new positions for new needs and to fill them temporarily until lists based on examinations can be promulgated. The court will not permit such a procedure to be used as a device for evasion of the civil service requirements and by appropriate proceeding will enforce compliance if evasion is established.
‘ ‘ And, additionally, the court expressly limits the scope of this decision to the status of Principal, Demonstration Elementary School ”.
In Porcelli v. Titus (431 F. 2d 1254, cert. den. 402 U. S. 944) a 1970 case cited by respondents, the court, in abolishing an existing promotional list in the Newark school system, held that boards of education have affirmative duties to integrate school faculties. In that case, the court was concerned with racially balanced schools and faculties. Here, in the instant matter, no such situation exists. William J. Murray, Administrative Director of the Department of Civil Service states in his affidavit *594 (p. 8): “ There are approximately 100 different titles or classes of positions which may be filled by appointment from this test, and, within each of these titles or classes, there are from a few to several hundred individual positions. Obviously, only a small percentage of these positions would be better filled by the appointment of an eligible having recognizable identification with the Black and/or Spanish-speaking community.
“ Certain of these individual positions, however, may necessarily require such a background. The decision as to whether such selective certification is necessary and permissible will be made by the Administrative' Director or the Assistant Administrative Director and Counsel, and then only after thorough study and analysis of the facts surrounding that particular position.”
Clearly, then this instance does not come within the scope of Porcelli (supra).
The decision as to whether an applicant may be hired or not, despite the results of the competitive examination rests not on competitive examination which is the foundation of Civil Service, but upon the whim and fancy, or studied decision of the Administrative Director or his assistant. The Administrative Director’s power is further strengthened by the notice that “ Commitments will be made on a basis of a final interview ”.
In effect, the notice manifestly grants to the Administrative Director an absolute right to award the position to whomever he pleases and he has given notice that he will award those jobs, that he sees fit, to those with recognizable identification with Black or Spanish-speaking minority communities.
The tests prescribed merely screen those who would be ineligible. From those who pass the test, the Administrative Director will decide who gets the various jobs. The test then becomes a charade. The veterans’ preference, awarded by constitutional mandate is measurable. (5 points — 2%, etc.) Under the instant arrangement, the administrative notice completely evades the Constitution and defeats the very purpose of the Civil Service Law.
In reaching this decision, the court notes that it has read and considered Chance v. Board of Examiners et al. of City of N. Y. (330 F. Supp. 203) submitted in support of the respondents’ position.
The court concludes that the act of the respondents in granting such a preference to those who are successful in the examination and who have recognizable identification with Black or Spanish-speaking minority communities is arbitrary and outside the statutory authority of the respondents.
Petition in all respects granted.