OPINION OF THE COURT
Jones, J.
We find no sufficient basis to disturb a regulation adopted by the Department of Social Services that fixes maximum shelter allowances for recipients of public assistance without at the same time making provision for exceptions due to circumstances peculiar to individual recipients. The flat grant concept in the administration of shelter allowances is neither unconstitutional nor in conflict with section 131-a of the Social Services Law.
Section 131-a of the Social Services Law contains the basic legislative authorization for monthly grants and allowances of public assistance. Subdivision 1 states the general authorization therefor; subdivision 2 prescribes the standard of monthly need for determining eligibility; subdivision 3 provides the maximum monthly grants for basic needs of eligible recipients; and subdivision 6 makes provision for special items and services. To be more specific, subdivision 1 provides that eligible recipients shall receive grants and allowances within the limits of the schedule set forth in subdivision 3 "except for additional amounts which shall be included therein for shelter, fuel for heating, additional cost of meals for persons who are unable to prepare meals at home and for other items for which specific provision is otherwise made”. In this CPLR article 78 proceeding, petitioners recipients challenge the regulation promulgated by respondent Commissioner of Social Services which prescribes the method for determining the amounts payable for shelter. That regulation—18 NYCRR 352.3 (a)—provides: "Rent allowances, (a) (1) Each social services district shall provide * * * a monthly allowance for rent in the amount actually paid, but not in excess of the appropriate maximum of such district for each family size, in accordance with the following schedules:” There then follows a schedule establishing a maximum shelter allowance for each district within the State with variations from district to *441 district and for family size within each district. The regulation was made effective October 1, 1975 except that for persons who had been receiving shelter grants prior to its adoption— under a practice by which local social services commissioners were authorized to establish shelter allowance maxima for their own districts and in some areas were approving payment of grants in excess of the local maxima in individual cases*— the regulation’s effective date was October 1, 1976. Prior to the latter date petitioners, two recipients of and one applicant for social services benefits, instituted this proceeding to challenge the validity of the regulation contending that, insofar as it permits no payments of shelter allowances in excess of the scheduled maxima and thus precludes recognition of special circumstances in individual cases, the regulation is in violation of State statute and both State and Federal Constitutions.
On appeal by respondents (the State and local commissioners of social services) from an order of the Appellate Division affirming the denial of their motion to dismiss the petition we assume, as we must, the truth of the factual allegations set forth in petitioners’ pleading (cf. Rovello v Orofino Realty Co., 40 NY2d 633). On the basis of that assumption it appears that all three petitioners reside in New York City where the applicable rent ceiling is fixed at $152 per month. Petitioner Bernstein, a recipient of social services benefits in the amount of $40.80 a month, is a 64-year-old widow living alone in a building with elevator service. For her accommodations she pays a monthly rental of $198.90. Because of two previous heart attacks, seizures and a diabetic condition, her physician has issued a letter stating that she needs to remain in the building in which she resides, where she also receives assistance from neighbors. Under the practice which had existed before promulgation of the challenged regulation Mrs. Bernstein’s rent had been approved by the Social Services Commissioner by reason of her special circumstances; however, inasmuch as under the new regulation the maximum monthly shelter allowance for a single-member family in the City of New York is $152, she was advised that as of October 1, 1976 her benefits would cease because the local social services agency would no longer consider the rent paid by her in excess of $152 a month in determining her eligibility for *442 benefits. The resulting disallowance of benefits would prevent Mrs. Bernstein from continuing to reside at her present location because she would "find it nearly impossible to find an apartment in an elevator building in her neighborhood for $152 per month.”
Petitioner Banister, a recipient of home relief public assistance, also resides alone. The rent on his ground floor apartment of $160 a month had been approved by the local Social Services Department because of physical and emotional limitations which made it "unhealthy” for him to climb stairs and which require him to be near his brother, who lives a block away and is thus able to look in on him from time to time. Mr. Banister was advised that, as of October 1, 1976, his benefit for shelter would be reduced from $160 to $152, the scheduled maximum allowance. He asserts that if he is evicted from his present residence it will be "nearly impossible” for him to locate an apartment on a ground floor or with elevator service in the neighborhood near his brother.
Petitioner Piotrowicz, a severely disabled veteran existing on Social Security and veteran’s disability benefits, resides alone in an apartment for which he pays monthly rent of $180. Friends residing in the apartment building assist him when he has a seizure, an occurrence to which he is subject from time to time. His application for medical assistance filed on March 2, 1976 was rejected by the local Department of Social Services when, in determining his eligibility for benefits, his standard of need was computed on the basis of the maximum $152 shelter allowance rather than the rental of $180 actually paid by him.
Petitioners joined together in this proceeding which they sought to maintain as a class action on behalf of all those receiving or eligible to receive home relief, veteran’s assistance or medical assistance who are paying rents higher than the ceiling set forth in 18 NYCRR 352.3 (a) and whose public assistance grant for rent accordingly is or is about to become lower than the amount of rent they actually pay, or who have been ruled ineligible to receive home relief or medical assistance solely on the basis that their standard of need is determined by the maxima in the regulation rather than by taking into account rents actually paid. In addition to a declaration of invalidity of 18 NYCRR 352.3 (a), petitioners sought a permanent injunction against enforcement of the regulation and a direction that respondents commissioners provide pe *443 titioners and other members of the class with a shelter grant for rent actually paid (up to a reasonable amount to be determined on a case-by-case basis) and determine eligibility for social services benefits on a standard of need determined on the same basis, without respect to the maximum shelter allowances set forth in the regulation.
Special Term denied the application for class action status but held that the imposition of maximum shelter allowances by the regulation was invalid as a failure to comply with the State’s constitutional and statutory provisions with respect to public care of the needy, denied respondents’ motion to dismiss and directed them to answer the petition. Pending determination of the proceeding, the court stayed any reduction of shelter allowances to petitioners below the level they were receiving on August 31, 1976. With its affirmance of the disposition at Special Term, the Appellate Division granted leave to appeal to this court on a certified question. We now reverse the determination below and uphold the departmental regulation.
At the outset it is to be observed that what is provided by 18 NYCRR 352.3 (a) is a shelter allowance equal to rent actually paid by a benefits recipient, subject however to a fixed ceiling, the amount of which varies from district to district and then with the number of persons in a family unit; to the extent that the scheduled maximum restricts the allowance payable—the feature challenged by petitioners—it is in the nature of a flat grant, rather than a special grant, the entitlement to and the amount of which would be determined on an individual basis taking into account the particular circumstances of each recipient. Petitioners assert that the challenged regulation, by failing to treat the shelter allowance as a special grant, violates and is inconsistent with section 131-a of the Social Services Law, violates the mandate of section 1 of article XVII of the New York State Constitution and deprives them of equal protection and due process of law under Federal and State Constitutions.
We note that, while petitioners purport to disclaim any challenge to the "use of maximum rent schedules”, assertedly limiting their attack to respondents’ failure "to make exceptions to those schedules when warranted”, their assault is in truth one on the flat grant concept, for the quintessence of that concept is the unavailability of ad hoc exceptions. Thus, if petitioners were to succeed in the present case on their *444 constitutional objections, every benefit provided by flat grant —including even the basic needs flat grant contained in subdivision 3 of section 131-a—would be open to adjustment in favor of individual applicants on appropriate showings, and the stated grants or allowable maxima provided by statute or regulation would remain only as points of departure for unsatisfied recipients. In short, the flat grant concept would be a dead letter.
In the provisions of public assistance grants, at different times New York State has chosen to follow two different concepts. For many years prior to 1969 our Legislature required individually constructed assistance grants, determined on the basis of a careful case consultation and evaluation of individual need measured against generally applicable guidelines. In 1969 the Legislature consciously and explicitly discarded the individualized grant concept in favor of a uniform flat grant concept. Under the latter concept, after statistical and qualitative analysis of a fair sampling of individual grants, a uniform figure is fixed that is determined to be adequate in general to meet the needs in question; it must be recognized, however, as is generally the consequence of any similar uniformity, that if grants were to be individually constructed, some such grants might be expected to exceed the uniform figure and others would fall below that figure. The Legislature’s decision to change from individualized to flat grants was manifested in the enactment of chapter 184 of the Laws of 1969. The legislative findings and purpose are set forth in section 1 of chapter 184:
"Section 1. Legislative findings and purpose. The spiraling rise of public assistance rolls and the expenditures therefor, despite a high level of general prosperity and an unprecedented high rate of employment, have become matters of primary social and economic concern to the people of the state of New York. The escalation continues, both in numbers of people requesting assistance and in the costs thereof, despite predicted continuance of general prosperity and high employment.
"The present procedure for establishing the monthly grant and allowance, based upon various factors, has been criticized as arbitrary, confusing, complicated and time-consuming for social services personnel and allegedly resulting in a lack of uniformity and uneven treatment of the recipients of public assistance throughout the state.
*445 "A uniform schedule of monthly grants and allowances will promote greater uniformity and equality of treatment of the recipients of public assistance, meet the needs of our less fortunate citizens and simplify and reduce the administrative detail. This will release caseworkers for the more important task of providing casework services to restore recipients to the dignity of self-sufficiency.
"The legislature therefore finds and declares that it is necessary and in the best interests of the people of the state to establish a schedule of maximum monthly grants and allowances of public assistance for the city of New York social services district and a schedule of maximum monthly grants and allowances of public assistance for all other local social services districts in the state, based upon the costs of delivering the needs of public assistance recipients in the respective social services districts of the state, and to make other remedial changes provided for in this chapter.”
The amendments effected by chapter 184 were soon challenged in the courts. The Supreme Court of the United States held that those portions of the chapter relating to recipients under the aid to families with dependent children program were invalid as violating the Social Security Act (US Code, tit 42, § 602, subd [a], par [23]) because of failure to include all mandated items of need. That court, however, gave explicit approval to the concept of the flat grant based on a statistical average as a permissible method of distributing public assistance, despite the fact that decreases would inevitably result to some recipients. "We do not, of course, hold that New York may not, consistently with the federal statutes, consolidate items on the basis of statistical averages. Obviously such averaging may affect some families adversely and benefit others. * * * What is at the heart of this dispute is the elimination of special grants in the New York program * * * Lest there be uncertainty we also reiterate that New York is not foreclosed from accounting for basic and recurring items of need formerly subsumed in the special grant category by an averaging system like that adopted in the 1968 New York City experiment with cyclical grants.” (Rosado v Wyman, 397 US 397, 419-420.)
 The adaptation in the New York social services distribution system of the flat grant principle represented the adoption by the Legislature of a legitimate approach to the problems posed by the increasing needs and demands for *446 public assistance. The flat grant concept had previously been employed by the Congress of the United States for public assistance programs (cf. US Code, tit 42, § 1381 et seq.) and wak encouraged by the Federal Department of Health, Education and Welfare (20 CFR 416.110 [f]). The ongoing experience within the social services districts of the State gave evidence that a continuation of the practice of tailoring grants to the needs of individual recipients, in the face of ever-increasing numbers of recipients, would result in an ever greater proportion of the resources allocated to help the needy being devoted to grant and allowance determination with a corresponding decrease in benefits available for distribution to those for whom aid was intended. Motivated to make optimum responsible use of the not unlimited funds appropriated and likely to be appropriated for social services, the Legislature elected to change from a system of individualized grants to one of uniform grants. We cannot say that, under the constraints of fiscal trimming and in the light of administrative experience, the Legislature’s recourse to the flat grant concept was without a reasonable basis or lacked a rational relationship to the legitimate State interest of seeking to assure optimum realized benefits from available public assistance moneys. The Supreme Court of the United States has said: "A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.’ Dandridge v. Williams; 397 U.S. 471, 487. While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment’s Equal Protection Clause, a classification that meets the test articulated in Dandridge is perforce consistent with the due process requirement of the Fifth Amendment.” (Richardson v Belcher, 404 US 78, 81.) Inasmuch as there is not—and indeed could not be —any claim here of "invidious discrimination”, and there is a rational basis for the flat grant concept which underlies section 131-a, we reject the challenge of petitioners predicated on constitutional claims of denial of equal protection and due process (cf. Montgomery v Daniels, 38 NY2d 41).
We turn then to consideration of the maximum ceiling rent reimbursement regulation promulgated by the Commissioner of Social Services. Although the enactment of section 131-a signaled the legislative preference for the flat grant concept, the statute itself left to the commissioner the implementation *447 of the shelter component of public assistance grants and allowances. Quite understandably the commissioner similarly chose to fashion his implementing regulation on flat grant principles. Experience had long taught that while many components of a public assistance grant did not vary significantly from one social services district in the State to another, there was a wide variation in shelter costs in different parts of the State. Fairly to meet the needs of the recipients under the flat grant concept would call for implementation on a district-by-district rather than a State-wide basis. This would reflect a greater sensitivity to individual need, but without return to the legislatively rejected system of individual special grants. Accordingly the commissioner promulgated the present regulation—constructed after detailed studies on the basis of a methodical sampling of actual costs of shelter in each local social services district and then the adoption of the 95th percentile of actual allowances, leading to a realistic result much more favorable to the recipients than had there been a straight statistical averaging. The resulting district-by-district schedule of rental ceilings displays the substantial variations in shelter costs—from $81 per month in Jefferson County to $205 per month in Suffolk County.
 Petitioners argue that the failure of the Legislature itself to specify a flat grant formula in section 131-a should be taken to manifest an intention to leave undisturbed the former special grant approach to provision of shelter costs. Support for this conclusion is purportedly found in the association of shelter costs with costs for fuel for heating, for meals for persons unable to prepare their meals at home and for other items for which specific provision is concededly made. We do not say that section 131-a mandates recourse to flat rather than special grants or that, had the commissioner chosen to continue to employ special grants for shelter needs, he would have been precluded from doing so by the language of the section. We do say that by similar token the section does not mandate retention of the system of special grants, and that flat grants on a district-by-district basis was entirely consistent with the legislative preference for flat grants on a State-wide basis to meet the basic needs of the recipients. The very considerable variation in shelter costs suggests why the Legislature chose not to impose a State-wide shelter standard.
Then, to have adapted the flat grant concept to a maximum principle rather than to promulgate it as a categorical stan *448 dard—thereby limiting reimbursement to amounts actually paid for shelter if below the ceiling—similarly manifests an intention to realize the optimum use of available funds and to limit assistance grants and allowances to actual individual need.
 In sum, the statute itself is not explicit as to whether grants for shelter shall be fixed by the employment of flat grants or by special grants. In that circumstance it is the responsibility of the Department of Social Services, as the body charged with the administration of all forms of social services and empowered to establish rules, regulations and policies to carry out its duties (Social Services Law, § 20, subd 2, par [a]; subd 3, par [d]), to implement the provisions of section 131-a. The regulation reflecting the choice made by the department, employing what is effectively a flat grant concept for shelter allowances, is beyond our power to disturb unless it is "so lacking in reason for its promulgation that it is essentially arbitrary.” (Matter of Marburg v Cole, 286 NY 202, 212.) As we so often have occasion to say, "[i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v Wyman, 28 NY2d 434, 438; Ostrer v Schenck, 41 NY2d 782, 786.) We are persuaded that the means chosen by the commissioner in this instance to effectuate the statutory provision is rational and consistent with the manifestation of legislative intent; accordingly we uphold his administrative regulation. We scarcely need add that for the reasons stated above the regulation is not subject to successful attack on constitutional due process or equal protection grounds.
 There remains only petitioners’ contention that the regulation in question by failing to provide them with the shelter allowance each deems necessary, having in regard his or her individual circumstances, violated section 1 of article XVII of the State Constitution. That section provides: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” We do not read this declaration and precept as a mandate that public assistance must be granted on an individual basis in every instance, thus precluding recourse to the flat grant concept, or indeed as commanding that, in carrying out the constitutional duty to *449 provide aid, care and support of the needy, the State must always meet in full measure all the legitimate needs of each recipient. When, as here, the over-all consequence of the method of distribution of aid to the needy adopted initially by the Legislature, and subsequently by the department charged with executing the social services program, is reasonably expected to be in furtherance of the optimum utilization of public assistance funds, there has been no violation of the constitutional command. As this court has recently observed, "[s]ection 1 of article XVII of the New York State Constitution mandates only that the 'needy’ and those unable to care for themselves be afforded aid and support 'in such manner and by such means, as the Legislature may from time to time determine’.” (Matter of Barie v Lavine, 40 NY2d 565, 570.) "In New York State, the provision for assistance to the needy is not a matter of legislative grace; rather, it is specifically mandated by our Constitution.” (Tucker v Toia, 43 NY2d 1, 7.) This principle relates, however, to questions of impermissible exclusion of the needy from eligibility for benefits, not to the absolute sufficiency of the benefits distributed to each eligible recipient. We explicitly recognized in Tucker that the Legislature is vested with discretion to determine the amount of aid; what we there held prohibited was the Legislature’s "simply refusing to aid those whom it has classified as needy” (p 8).
For the reasons stated, the order of the Appellate Division should be reversed, without costs, and the petition dismissed.

 A practice which we are informed was disapproved by the Department of Health, Education and Welfare, and was discontinued when challenged in Nero v Lavine (United States Dist Ct, Southern Dist of NY, 75 Civ 1024).