Jones, J. (dissenting).
I must reject the view of the majority that subdivision (a) of section 158 of the Social Services Law denies petitioners equal protection of the laws insofar as it excludes from home relief assistance persons who would otherwise be qualified but who are beneficiaries under the Supplemental Security Income program.
The standard of review of petitioners’ equal protection claims is the traditional rational basis test (cf. Montgomery v Daniels, 38 NY2d 41, 59).* Thus, the question for judicial resolution is whether there is a rational basis for separately classifying home relief and Supplemental Security Income recipients and then for distinguishing as the law now does in the benefits to be received by the members of the two classes.
A review of the history which preceded the amendment of subdivision (a) of section 158 is instructive. Prior to January 1, 1974 the State of New York distributed public assistance in three categories: home relief, aid to dependent children and aid to the aged, blind and disabled (AABD). Benefits were not uniform but differed from one category to another. In 1974 the Federal Government, through the Department of Health, Education and Welfare, instituted a new nationwide program of Federal assistance to the aged, blind and disabled, making *464 grants to such persons payable by the Social Security Administration as Supplemental Security Income (SSI). It was thought desirable to make distribution through Social Security channels rather than as public assistance grants, and, by the very nature of the characteristics of the category, once eligibility was established there was little likelihood of any change of status during the remainder of each recipient’s lifetime and thus little occasion for periodic verification of eligibility. The program was also designed to permit any State desiring to supplement the Federal grants to pay a lump additional sum to the Federal Government for distribution to that State’s residents as a part of SSI payments over and above the portion of the payments financed by Federal funds, thereby eliminating the need for a duplicate distribution system. As a condition to a State’s obtaining the advantages of such Federal distribution of the State’s funds, the State was obliged to comply with Federal specifications which (1) required that total benefits to individual recipients be no less than the amount they had been receiving from the State on December 31, 1973, and (2) permitted variations in the supplements provided by a State only on the basis of geographical location and living arrangements—not on other factors which had been recognized and had produced differences m benefit amounts under the program previously administered by the State.
Electing to take advantage of the Federal distribution program as did the other States, New York discontinued its AABD program as of January 1, 1974 and enacted a new title 6 to the Social Services Law (§§ 207-212) authorizing additional State payments for eligible aged, blind and disabled persons to be distributed as a part of SSI, with the State benefits to vary only to the extent permitted by Federal regulations (L 1974, ch 1080, § 1). Simultaneously, to assure consistency and to prevent duplication of benefits, subdivision (a) of section 158 of the law—the section defining eligibility for home relief—was amended to provide that a person receiving SSI and additional State payments, or either, would not be eligible for home relief (L 1974, ch 1080, § 2). Although the amount of New York State supplement to SSI per recipient has twice been increased by amending legislation, because certain allowances available to persons receiving home relief are variable in respects not permitted under Federal regulations governing State contributions to SSI, a small segment of *465 the recipients in the SSI category are receiving total benefits less than what would be paid to them were they recipients in the home relief category—a category for which it is contended that they would qualify if they were not made ineligible therefor by the amendment to subdivision (a) of section 158. It is this difference which creates the categorial discrimination that the majority finds objectionable and unconstitutional.
The State’s objective in creating two separate categories of recipients—those receiving Supplemental Security Income and those receiving home relief—was to obtain the very substantial economic benefit to the State, and the incidental advantage to the recipients, which would flow from administration and distribution of benefits by the Federal Social Security Administration. It is true that identification of the recipients in the former category turns on their right to receive Federal Social Security benefits (or, phrased otherwise, is related to the circumstance that the immediate payor will be the Federal rather than the State government) whereas, with respect to other categories of public assistance, classification is based on what might be termed some descriptive characteristic of individual need of the recipients. I perceive no necessary constitutional infirmity in such a categorial classification, however, provided, of course, that the classification is rationally related to the achievement of a legitimate State interest. (Cf. Trimble v Gordon, 430 US 762.)
Petitioners concede that only a relatively small number of recipients would receive larger benefits in the home relief category than they now receive under the SSI program. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,’ it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.’ Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accomodations—illogical, it may be, and unscientific.’ Metropolis Theatre Co. v. City of Chicago, 228 U. S. 61, 69-70.” (Dandridge v Williams, 397 US 471, 485.)
We have recently held in Matter of Bernstein v Toia (43 NY2d 437, 446 [decided herewith]) that the State may properly be "[motivated to make optimum responsible use of not unlimited funds appropriated and likely to be appropriated for *466 social services”. The present is but another instance of a valid legislative selection of one of several means by which to discharge the State’s constitutional responsibility for "the aid, care and support of the needy” (NY Const, art XVII, § 1). The 1974 enactment of title 6 of the Social Services Law and the related amendment of subdivision (a) of section 158 manifest a selective authorization and budgeting of expenditures of major dimension. This is not an instance of an attempt by resort to a "saving of welfare costs [to] justify an otherwise invidious classification”. (Shapiro v Thompson, 394 US 618, 633.)
Petitioners’ reliance on Buffington v Beal (430 F Supp 1281) is misplaced. The determination in that case hinged on what the Federal District Court perceived to be the proper construction of the provisions and command of the Pennsylvania Public Welfare Code, obviously inapplicable to our case. To the extent that the decision in Buffington may be read as also addressing a Federal constitutional claim of denial of equal protection, I would reject its conclusion. The optimum responsible use of available funds to avoid substantial diversion to defray costs of administration is a legitimate State purpose. (Matter of Bernstein v Toia, 43 NY2d 437, supra.) The assumption which appears to underlie petitioners’ claims is that some constitutional mandate dictates that all legitimate needs of recipients of governmental benefits must be met. We rejected this argument in the Bernstein case. So, too, did the Supreme Court of the United States in Jefferson v Hackney (406 US 535, 546-547) in sustaining the Texas system of public assistance which provided for the meeting of different percentages of need in different recipient categories: "This Court emphasized only recently, in Dandridge v. Williams, 397 U. S. 471, 485 (1970), that in 'the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.’ A legislature may address a problem 'one step at a time,’ or even 'select one phase of one field and apply a remedy there, neglecting the others.’ Williamson v. Lee Optical Co., 348 U. S. 483, 489 (1955). So long as its judgments are rational, and not invidious, the legislature’s efforts to tackle the problem of the poor and the needy are not subject to a constitutional straitjacket. The very complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them.” I see no reason why the principle enunciated by the Supreme Court of the United States in *467 Williamson v Lee Opt. Co. (348 US 483, 489)—that a Legislature in fashioning State programs may "select one phase of one field and apply a remedy there, neglecting the others”— is any less controlling in the application of the constitutional command in times of economic contraction than in periods of economic expansion.
For the reasons stated in Matter of Bernstein v Toia (43 NY2d 437, supra), I would reject the contentions of petitioners based on the provisions of section 1 of article XVII of our State Constitution.
Accordingly, I would reverse the order of the Appellate Division and dismiss the petition.
Judges Gabrielli, Fuchsberg and Cooke concur with Judge Wachtler; Judge Jones dissents and votes to reverse in a separate opinion in which Chief Judge Breitel and Judge Jasen, concur.
Order affirmed, with costs.

 The argument urged by petitioners that section 1 of article XVII of the New York State Constitution creates a fundamental right to total fulfillment of their needs by public assistance (and consequently that a statute, like Social Services Law, § 158, subd [a], which interferes with such a right may be upheld only if it meets the strict scrutiny test by a demonstration both that it advances a compelling State interest and that no less intrusive means exists for the accomplishment of that objective) is rejected by this court in Matter of Bernstein v Toia (43 NY2d 437).