OPINION OF THE COURT
Edith Miller, J.
On April 10, 1980, upon the annexed affirmation of the Law Guardian to the children herein and upon all prior pleadings and proceedings, the Commissioner of Social Services was directed to show cause why the court should not issue an order directing the commissioner pursuant to section 255 of the Family Court Act and section 398 of the Social Services *889 Law to reinstate to the respondent mother herein a welfare rent budget for five persons as previously provided by the Department of Social Services and in addition to provide for supplemental moneys to cover the costs of home visits for the two children who are presently in placement with the commissioner.
The facts in this case are not in dispute. The respondent mother herein is the parent of four children. Two of the children presently reside with her in an apartment adequate for five persons. The other two children presently reside in Children’s Village, a child-caring facility in contractual relationship with the commissioner to provide services for children in placement with the commissioner. The children had previously been remanded by the Family Court to the psychiatric institute. Although the children no longer need psychiatric hospitalization, certain problems had to be worked out before the children could rejoin the family unit. Upon the recommendation of the commissioner, the children were voluntarily placed in foster care by the respondent mother. The voluntary placements of Craig and Keith were approved by the Family Court on April 14, 1980 pursuant to section 384-a of the Social Services Law. The court further approved the plan of the commissioner to return the children to the mother on August 31, 1980, if the children were indeed ready for discharge on that date.
The respondent mother is a welfare recipient totally dependent upon the Department of Social Services for financial assistance. Public assistance grants are made on a per capita basis for family members residing in the same household. There is a per capita allowance for food and other necessities and a per capita allowance for shelter. In March 1980, the Department of Social Services reduced the rent allowance in the welfare budget from $226 per month for five persons to $194 per month for three persons based on the fact that Craig and Keith no longer actually resided in the household. For the same reason they also eliminated the per capita allowance for food and other necessities for Craig and Keith. This placed the mother in the classic dilemma familiar to the court involving children in foster care whose families receive public assistance. If the mother remains in the family apartment, in the home and community with which the children are familiar, she can continue to pay the rent only by depriving herself and the other two children of food and clothing to make up the $32 monthly deficit. If she moves to a smaller apartment in *890 response to the reduced rental allowance, then the children cannot be returned to her when placement is no longer required because she would no longer have adequate space for the two additional children. Moreover, the plan worked out in respect to these children included weekend and holiday home visits to the family apartment. This plan cannot be realized if the mother is in a smaller apartment. The elimination of the food and other necessities allowances have also made it difficult, if not impossible, for the mother to provide food for the children when they come home on visits. The welfare schedule for food and other necessities was promulgated by the Department of Social Services in 1974 and has not been increased since that date to reflect the increase in the cost of living. On its face, the schedule, providing a food budget allotment of $100 semimonthly, for a three-person family is inadequate to feed this mother and her two children when her other two children are making weekend and holiday home visits. The present food budget coupled with the $32 rent deficiency presents this mother with a serious problem that has little hope of a viable solution.
It is the contention of the attorney for the commissioner that the reinstatement of the children to the budget is prohibited by the rules and regulations of the Department of Social Services and that the validity of the rule (18 NYCRR 352.3) has been upheld by the Court of Appeals.[1]
The court finds that the rental allowance schedule does mandate that a family with five members living in New York City can only receive a maximum monthly shelter allowance in the amount of $226 and that a three-member family is entitled to a maximum shelter allowance of $194. (See 18 NYCRR 352.3 [a].) However, the regulations of the department also provide for continuation of the ADC grant where a member of the family is "temporarily absent” from the household. (See 18 NYCRR 349.4 [2] [ii] [a]; 18 NYCRR 351.20; 18 NYCRR 369.2 [c] [1] [i] [c]; 18 NYCRR 369.4.) A pertinent provision of the department’s regulation is as follows: "Such absence may include visits to friends or relatives, attendance at camp, enrollment as a resident pupil or temporary foster care, either in a family home or in an institution; but the costs of tuition and maintenance in a residence school, or of foster care, shall not be met through the regular ADC grant to the household.”[2] (Emphasis supplied.)
*891 Turning to counsel’s contention that the Court of Appeals upheld the validity of the department’s regulation that case must be distinguished from the instant matter. Writing for the majority of the court, Mr. Justice Jones found that the flat grant concept in the administration of shelter allowances without making provision for exceptions due to circumstances peculiar to individual recipients was not unconstitutional.[3] In Matter of Bernstein v Toia (43 NY2d 437), the three petitioners all had special needs and were attempting to obtain additional allowances for shelter as a result of their individual circumstances. However, in the case at bar the recipient is not seeking additional money. The mother’s condition arises solely because the commissioner used his discretion to consider her family a "three-member household” solely because two of her children are in temporary placement. This interpretation mandated that the shelter allowance which she had previously received to maintain a home for her four children be reduced.
The court further finds that this family is and remains a five-person family. Although emancipated minors can set up separate domiciles for themselves, unemancipated minors continue to have as their place of domicile, the residence of their parents or guardians.
For the commissioner to contend otherwise would be perfectly inconsistent with the commissioner’s position in other matters regarding children in placement. For example, if either Craig or Keith committed a delinquent act in Westchester County where Children’s Village is located, following a fact-finding hearing the matter would be transferred to New York County for the dispositional hearing. The public policy of the State of New York is to hold the dispositional hearing in the county where the parent or guardian of the youngsters are domiciled no matter how many years the youngster has resided in placement outside the county. This practice is followed despite the provisions of section 742 of the Family Court Act which provides that the same Judge shall preside at both the fact-finding and dispositional hearings. The same is true if a person in need of supervision petition was drawn. That petition would also be transferred. If either Craig or Keith needed an operation, the consent of the mother would be required no matter how long the child had been in placement. Until parental rights are legally terminated or until the *892 mother abandoned the youngsters, such decisions would be made by the mother no matter how long the children were in placement. In the same manner new domicile or residence may not be acquired by the mere change of residence (cf. Matter of Seitelman v Lavine, 36 NY2d 165). Further, an infant is non sui juris and as such is incapable of fixing his domicile or residence (see Matter of First Trust & Deposit Co. v Goodrich, 3 NY2d 410, 416). In the instant matter the commissioner’s plan has provided for the return of the children to the home on August 31, 1980. Consequently, this foster care placement is indeed a temporary situation. As a result, the court concludes that neither the domicile nor the permanent residence of the children presently in placement have changed.
The court also finds that the actions of the commissioner, to wit, the setting of a target date of August 31, 1980, when the children are to be discharged to the mother, the provision for weekend and holiday visiting, the participation of the commissioner and his agent, Children’s Village, in all aspects of affirmative planning for these children all indicate that foster care is considered by the commissioner to be a temporary measure for this family.
The court cannot avoid noting that children whose parents do not receive public assistance can often be returned home sooner. Their parents are usually able to maintain the same family and their income is flexible enough to feed their children on home and holiday visits. Most authorities agree that it is easier for parents to maintain contact and for caseworkers to strengthen parental ties when children visit in the natural and realistic surroundings to which they are being prepared for discharge. Home visits are important to all children regardless of whether or not they are on public assistance.
Welfare recipients are at a distinct disadvantage. They, more often than not, have to visit their children in institutions or in the offices of agencies. The commissioner will reimburse them for carfare to visit the children in those artificial surroundings but will not reimburse them for food if the children come home.
The lack of comprehensive planning and the shortsightedness of the commissioner insure that New York City will continue for many years to come to keep children in foster care longer than any other region in the country. At the *893 present time we have approximately 28,000 children in foster care at great cost to the public. It is most unfortunate that the income maintenance section of the Department of Social Services focuses upon budget allowances without taking any cognizance of the planned casework for the family which has been formulated by the special services for children section of the department. A primary responsibility of the commissioner is "to preserve and stabilize family life wherever possible”.[4] Obviously, the reduction of the shelter allowance not only negates the supportive services provided by the Department of Social Services but may very likely lead to the break-up of the family household. The chances of discharge to the parent are considerably better when the plan involves intensive casework services and visitation. It is inconceivable to this court that the respondent who in good faith has co-operated with the department should now be penalized for following the advice of the caseworkers. This plan which has been implemented by the special services for children and the mother is in accord with the public policy of the State. The Social Services Law has incorporated within it the State function regarding the preservation of a child’s family. A pertinent statutory provision is as follows:
"The legislature hereby finds that:
"(i) it is desirable for children to grow up with a normal family life in a permanent home and that such circumstance offers the best opportunity for children to develop and thrive;
"(ii) it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered;
"(iii) the state’s ñrst obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home”.[5]
 [6](Emphasis supplied.)
Turning now to the applicability of section 255 of the Family Court Act, the court is aware that this statute was only recently considered by the Court of Appeals in Matter of Lorie C.6 In that decision the court, although recognizing the *894 authority of a Family Court Judge to order agencies or institutions which have a child under their care to render assistance and co-operation within their legal authority, indicated that the power to issue such an order is limited by the legal authority of the person or institution to which the order is addressed and the object of the Family Court Act.[7] As stated previously, the Family Court has already approved the treatment and care which the commissioner has proposed for the children, Craig and Keith. Further, it is the commissioner’s function to provide the shelter allowance for eligible welfare recipients. And, finally, it is public policy to preserve and reunite the family unit whenever possible.
The court concludes that the instant case is a situation in which the Legislature intended section 255 of the Family Court Act to be implemented. The Commissioner of the Department of Social Services is hereby ordered within seven days to assist and co-operate in the reinstatement of the shelter allowance for the two children of the recipient mother and to provide supplemental moneys for food expenses during the home visits of the two children.

. Matter of Bernstein v Toia (43 NY2d 437).

.18 NYCRR 369.4 (c) (2).

. Matter of Bernstein v Toia (43 NY2d 437, 440, supra).

. Social Services Law (§ 398, subd 2, par [a]).

. Social Services Law (§ 384-b, subd 1, par [a]).

. 49 NY2d 161.

. Matter of Lorie C. (49 NY2d 161,168, supra).