■ In the Matter of SPLIT ROCK NURSING HOME, Petitioner, v OFFICE OF HEALTH SYSTEMS MANAGEMENT OF THE DEPARTMENT OF HEALTH OF THE STATE OF NEW YORK et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of Health, which reduced petitioner's Medicaid reimbursements for the years 1972 and 1973. Petitioner is a private nursing home located in The Bronx, New York, having opened for business in February, 1971. Its reports to the New York State Department of Health (Department) for the year 1971 established a prima facie basis for the grant of an "incentive allowance" pursuant to former section 86.31 of the Administrative Rules and Regulations of the Department of Health (10 NYCRR 86.31, repealed Oct. 14, 1975). This section provided as follows: "86.31 Incentive allowance; proprietary nursing homes. Within the rate of payment for proprietary nursing homes, an amount may be included as an allowable cost which is equal to a percentage established by the Commissioner to represent a sharing in the amount by which the total costs of administrative, dietary and housekeeping services of an individual facility are lower than the weighted average ceiling of the costs of these services for the group. In instances where the latest survey disclosed significant deficiencies in the operation of a facility, the incentive allowance will not be available." Based upon an audit of 1971 operating costs, petitioner was granted an incentive allowance for the rate period effective July 1, 1972 through December 31, 1972, and, after a change in its fiscal year, for the period of January 1, 1973 to December 31, 1973. As a result of an audit report dated November 11, 1975, adjustments were made by the Department auditors, effecting a reduction in the Medicaid reimbursement for those years as well as a reversal of the incentive allowance. Petitioner protested the reduction in its reimbursement rates (enforced by withholding sums of approximately $350,000 from petitioner in 1978) and a hearing was held in 1978. Following that hearing on the audit reductions, petitioner abandoned its claim of error as to many of the various accounting deficiencies charged to it upon the audit. However, petitioner continued to protest the disallowance of the incentive allowance and the finding that the reimbursement rate for the period at issue should be based upon petitioner's actual costs for 1971. It is those two items that petitioner continues to contest in this proceeding. As to the use of actual 1971 costs for setting the rate used in the period of July 1, 1972 through December 31, 1973, the Director of the Office of Health Systems Management (Director) computed the utilization factor at 98.4%. Petitioner has failed to establish any mathematical error or legal error as to this issue. As to the disallowance of the incentive allowance, the Director found: "[t]hat certain personal expenses of the operator and patients' personal monies were included in the working

capital and hence the equity of the facility for reimbursement purposes, and upon audit disallowed, it is the Director's conclusion that the Respondent's action in so including them were significant deficiencies in the operation of the facility, as described in § 86.31. The use of patient monies to enhance one's return on equity by improperly using that money to inflate a nursing home's equity is not a proper use of the patient's personal monies. An audit, such as performed by Mr. Kern is a survey within the meaning of § 86.31, as the term 'survey' is synonymous with the term 'inspection' as set forth in Public Health Law § 2803(1)(b). Hence, the incentive allowance should not be available to [petitioner]." An agency interpretation of its own regulation is entitled to great weight and will be upheld if not irrational or unreasonable (e.g., *Matter of Johnson v Joy,* 48 NY2d 689; *Matter of Bernstein v Toia,* 43 NY2d 437). The testimony adduced at the hearing made it clear that in 1971, the policy of respondent was to disallow incentive allowances only if a facility was on the significant operating deficiency list. Although one witness did testify that sometime after 1974 the commissioner decided that incentive allowances should also be lost if an audit disclosed improprieties in a facility's record keeping, no memorandum or other writing was produced disclosing this change of position. In fact, the only writing describing respondent's new "interpretation" of section 86.31 is the commissioner's order in this case dated January 30, 1980, four years after repeal of the regulation and two years after petitioner first protested respondent's action. Testimony at the hearing disclosed that surveys of the nursing homes were conducted by regional health directors to identify those facilities providing less than adequate care. Any facility so identified was not eligible for an incentive award. Respondent's construction of "significant deficiencies in the operation of the facility" to include improprieties in the record keeping of the nursing home is not supported by any administrative precedent, written or otherwise. Thus, it should be rejected and petitioner's incentive allowance restored. Determination modified, by annulling so much of the order of the Commissioner of Health as disallowed petitioner's incentive allowance, and, as so modified, confirmed, with costs to petitioner. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Herlihy, JJ., concur.