■ In the Matter of C. HERBERT KAUFMAN, Petitioner, v BERTRAM D. SARAFAN, as Member of the New York State Racing and Wagering Board, et al., Respondents. — Findings and order of respondent New York State Racing and Wagering Board on April 7, 1980, confirming, on administrative appeal, the decision of the stewards at Aqueduct Racetrack made on January 20, 1980, confirmed, without costs. Petitioner, owner of the winning horse in the fifth race at Aqueduct on January 18, 1980, sues under CPLR article 78 to have annulled the board's ruling confirming the stewards' holding, made two days following the race, after a hearing, that the horse was disqualified for carrying an incorrect weight, supposed to have been set for each entered horse according to its track record. Unfortunately for petitioner, it was learned after the race that his horse had run with an incorrect handicap based on its record. This, petitioner blames on the racing secretary charged with enforcing the race's conditions. However, the controlling regulation, 9 NYCRR 4033.7, places responsibility for the correct handicap upon the horse's owner, and that is what controls. The rule cannot be ignored by use of *ad hoc* recomputations, and it is for the board to interpret its own regulations. (*Matter of Howard v Wyman,* 28 NY2d 434, 438; *Ostrer v Schenck,* 41 NY2d 782, 786; *Matter of Bernstein v Toia,* 43 NY2d 437, 448.) The basis for the regulation fixing responsibility upon the one who brings the horse to the race is eminently rational and fair. We should not disturb the board's determination. Concur — Murphy, P. J., Sandler, Markewich and Milonas, JJ.

Kupferman, J., dissents in a memorandum as follows: I dissent and would annul the order of the respondent New York State Racing and Wagering Board (NYSRWB) sustaining the decision of the Aqueduct Race Track stewards disqualifying the horse "Blazin' C" as a winner. The conditions for participating in the fifth race of January 18, 1980 at Aqueduct Racetrack as set forth in the "condition book" and the official program were as follows: "7th race — The Cooperstown. One mile and Seventy Yards. Purse 23,000.00. For Four-Year Olds and Upward Foaled in New York State and Approved by the New York State-Bred Registry which have never won two races other than Maiden, Claiming or starter * * * 122 lbs. Non-winners of a race other than maiden or claiming since December 1 allowed * * * 3 lbs. Of such a race *since then* * * * 5 lbs" (emphasis added). As the brief of the Attorney-General, attorney for the respondents, states: "As published, the conditions for the above weight allowances were 'ambiguous' (R. 66) or 'redundant' (R. 72) since any horse qualifying for the three pound weight allowance would also qualify for the five pound weight allowance. It appears that a date prior to December 1 should have been provided in the condition book in place of the words 'since then' to differentiate between those horses entitled to the three pound allowance and those entitled

to the five pound allowance (R. 42-43). However, no one brought this irregularity to the attention of the Racing Secretary prior to the race". The "Blazin' C" entry blank contained a question mark in the box marked "Allowance". This question mark, the testimony showed, was placed there by the entry clerk, because he was unsure of the allowance to be assigned in this race. "Blazin' C" ran with a weight advantage to which he was not entitled, because he had won a race on December 26, 1979 and should have carried full weight. All the other horses received the five-pound allowance. Of course, even to the uninitiated, such as this court, it is obvious that for "Blazin' C" to have carried 122 pounds instead of the 117 pounds that he actually carried, meant that he would have the handicap which would normally be used to equalize the situation among the various horses in the race. "Blazin' C" won by three lengths. There has been no determination as to what actual effect the difference of weight had on the dimension of the victory. In an election case, there would be a mathematical computation. (See *Matter of Ippolito v Power,* 22 NY2d 594, 598; *Matter of Doherty v Mahoney,* 42 NY2d 1069, 1071.) In setting aside the result, the NYSRWB places great reliance on its rule 4033.7 (9 NYCRR 4033.7) contained in the part headed "Weighing Out". The rule states: "The owner is responsible for the weight carried by his horse." In this way, the NYSRWB seeks to avoid its own responsibility for having failed properly to follow its own rules. It should be pointed out that the disqualification in this matter affects only the rights of the owner to the purse money and the prestige for the horse of having been a winner. The disqualification having occurred two days after the race, when the order of finish had been termed official, it could not affect the mutuel payoff. (9 NYCRR 4008.4.) While no Bucephalus or even the great horse Silver, "Blazin' C" does not deserve such ill treatment. If error was made, it was compounded by the NYSRWB. As Shakespeare would have said, "An ill-favored thing, sir, [a poor thing] but mine own." The petitioner could do no less than oppose this ill-conceived disqualification. The determination sustaining the disqualification was an abuse of discretion. At the very least, the effect of a lesser weight as against the three-length winning margin should first be analyzed before victory is denied.