*913 OPINION OF THE COURT
Elliott Wilk, J.
Petitioners Pearlie Roberts and her two minor children and four minor grandchildren bring this CPLR article 78 proceeding seeking a reversal of an administrative decision after fair hearing.
Respondent Cesar Perales (the State), as Commissioner of the New York State Department of Social Services, is obligated to implement and supervise all social welfare programs within the State. (Social Services Law §§ 11, 17, 20.) He is responsible for evaluating the rules and procedures adopted by local social service districts and monitoring their compliance with the Social Services Law and regulations. (Social Services Law § 20 [3].)
New York City is a local social services district. (Social Services Law § 56.) Respondent William J. Grinker (the City), as Commissioner of the New York City Human Resources Administration, is responsible for providing welfare services to New York City residents.
In June 1987, Pearlie Roberts’ two children and four grandchildren were preliminarily remanded to respondents’ custody and began to reside in foster care.
Until May 6, 1988, Pearlie Roberts continued to receive Aid to Families with Dependent Children (AFDC) benefits, food stamps and Medicaid for a household of seven people. These benefits were reduced to a household of one after she received a notice of intent from the City dated April 26, 1988.
Pearlie Roberts challenged this reduction of benefits at a fair hearing before an Administrative Law Judge (ALJ) on July 5, 1988. Even though the City offered no testimony or proof to contradict Pearlie Roberts’ testimony that the six children were only temporarily absent from her household, the State’s decision after fair hearing dated August 11, 1988, upheld and affirmed the City’s reduction of her benefits.
Meanwhile, on August 4, 1988, a final dispositional hearing was held in Bronx Family Court. On that date, Family Court Judge Rhoda Cohen ordered that Pearlie Roberts’ two children be returned to her custody immediately, that two grandchildren be returned to her on September 16, 1988, and that the remaining two grandchildren commence biweekly weekend home visits on September 23, 1988 and permanently be returned on December 24, 1988.
Petitioners bring this article 78 proceeding to reverse and *914 annul the State’s decision after fair hearing and for a declaration that they are entitled to AFDC benefits for a household of seven retroactive to May 6, 1988.
Fundamental constitutional principles of due process, equal protection, and privacy protect parents’ rights to supervise and rear their children. (See, Santosky v Kramer, 455 US 745, 753 [1982]; Wisconsin v Yoder, 406 US 205 [1972]; Stanley v Illinois, 405 US 645, 651 [1972].) "The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment * * * the Equal Protection Clause of the Fourteenth Amendment * * * and the Ninth Amendment”. (Stanley v Illinois, 405 US, supra, at 651.) Congress and the New York State Legislature have enacted laws consistent with this constitutional protection.
Congress requires that States receiving Federal funds for foster care, as New York does, must make "reasonable efforts” to encourage the reunification of families. When a child is in foster care "reasonable efforts will be made * * * to make it possible for the child to return to his home”. (42 USC § 671 [a] [15].)
The New York State Legislature has declared that the State’s primary obligation with respect to children in foster care is to provide services to restore family integrity. "[T]he state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home”. (Social Services Law § 384-b [1] [a] [iii].) The Legislature has mandated that families "shall not be separated for reasons of poverty alone, and they shall be provided services to maintain and strengthen family life.” (Social Services Law § 131 [3].)
Federal AFDC regulations expressly provide that a family remains eligible for AFDC benefits "even though * * * the child * * * is temporarily absent from the customary family setting.” (45 CFR 233.90 [c] [1] [v] [B].)
Defendants’ own regulations provide that families remain eligible for full AFDC benefits even if their children are "temporarily absent.” The regulations specify that such absence may include "temporary foster care”. (18 NYCRR 369.4 [c] [2].)
In violation of the plain language of these regulations, and in abrogation of their constitutionally and statutorily imposed duties, it is apparently defendants’ policy to reduce or cut off AFDC benefits to the vast majority of families with children in foster care.
*915 In an attempt to justify its policy of permitting the reduction of AFDC benefits to most families with children in foster care, the State distinguishes between short-term and long-term foster care and contends that "temporary foster care” as used in 18 NYCRR 369.4 (c) (2) really means only short-term foster care. This contention is unpersuasive, especially in the face of respondents’ concession that all foster care, by its very nature, is temporary.
Respondents’ actions in this case violate both the spirit and the letter of the law. Their reduction of benefits to petitioners diminished the family’s ability to maintain adequate housing for all family members. Such a reduction seriously undermined Pearlie Roberts’ ability to maintain a household to which her children and grandchildren could return.
Rather than taking all reasonable steps necessary to facilitate the return of children from foster care to their families, respondents have devised and implemented a policy which actually impedes reunification. This is not permissible. (See, Matter of Chrystol B., 104 Misc 2d 888 [Fam Ct, NY County 1980].)
In opposition to the petition the City contends that it is bound by the State’s decision after fair hearing. Both respondents argue that the decision after fair hearing is correct, is mandated by Family Court Act § 1055 (g), and should be upheld. I disagree.
The statutory scheme of article 10 of the Family Court Act is that, until a dispositional hearing is held pursuant to Family Court Act § 1052, a child in foster care is only preliminarily remanded to the custody of the State; the child is not considered "placed” in foster care.
Family Court Act § 1055 is only triggered after there is a dispositional hearing pursuant to Family Court Act § 1052 and the disposition is placement in foster care. Thus, respondent’s reliance on Family Court Act § 1055 (g), which permits the reduction of a family’s AFDC grant once a child is placed in foster care pursuant to a Family Court Act § 1052 dispositional hearing is erroneous. Petitioners’ AFDC benefits were reduced prior to their dispositional hearing and Family Court Act § 1055 (g) did not apply. Furthermore, the decision after fair hearing was not rendered until after the dispositional hearing which resulted not in the children’s placement in foster care, but in their return to their mother/grandmother.
Accordingly, the decision after fair hearing was arbitrary *916 and capricious. The petition is granted and petitioners are entitled to reimbursement of AFDC benefits for a household of seven retroactive to May 6, 1988. This, of course, may be offset by any money petitioners received as a result of their application for aid continuing.