preme Court, New York County (Herbert Altman, J.), both rendered on or about February 9, 1993, unanimously affirmed.

Application by appellant's counsel to withdraw as counsel is granted. *(See, Anders v California,* 386 US 738; *People v Saunders,* 52 AD2d 833.) We have reviewed this record and agree with appellant's assigned counsel that there are no non-frivolous points which could be raised on this appeal.

Pursuant to CPL 460.20, defendant has the right to apply for leave to appeal to the Court of Appeals by making application to the Chief Judge of that Court and by submitting such application to the Clerk of that Court or to a Justice of the Appellate Division of the Supreme Court of this Department on reasonable notice to the respondent within thirty (30) days after service of a copy of this order, with notice of entry.

Denial of the application for permission to appeal by the Judge or Justice first applied to is final and no new application may thereafter be made to any other Judge or Justice. Concur—Murphy, P. J., Sullivan, Rosenberger, Nardelli and Tom, JJ.

■ Leo Wortzman, Respondent, v Gregory Kaladjian, Appellant, et al., Respondent. [617 NYS2d 466] —Order and judgment (one paper), Supreme Court, New York County (Leland DeGrasse, J.), entered February 3, 1993, which, *inter alia,* granted the petition to the extent of remitting the matter to the New York City Human Resources Administration for reconsideration of the petitioner's eligibility for medical assistance based on his actual expenses, including documented expenses and medical bills the New York State Department of Social Services indicated should be used to offset excess income, unanimously modified, on the law, to vacate the explicit directions imposed for recalculating the petitioner's eligibility, and the matter is remitted to the respondents for reconsideration of the petitioner's eligibility for medical assistance consistent herewith, and otherwise affirmed, without costs.

The petitioner is a psychiatrically disabled veteran residing in an adult care facility licensed and regulated by the New York State Department of Social Services ("DSS"). He instituted this CPLR article 78 proceeding seeking to annul a determination of the respondent DSS which upheld a determination of the New York City Human Resources Administration ("HRA") denying his application for medical assistance until he incurred $113 in medical expenses. He sought a retroactive recalculation of his eligibility for medical assis-

tance based on his actual expenses and an allocation of a personal needs allowance.

Because of the funds the petitioner receives from Social Security Disability and Veterans Disability benefits, he does not receive Supplemental Security Income ("SSI") and is not classified as "categorically needy". He is not, therefore, automatically eligible for New York's Medicaid or medical assistance program. Those individuals who are determined to be "medically needy", however, may qualify for medical assistance if they incur medical expenses in an amount that effectively reduces available income to the eligibility level (see, Social Services Law § 366). In effect, a person is "medically needy" when his or her income is too low to meet medical expenses but too high to qualify for SSI. The difference between net income and the eligibility level is known as "excess income".

The petitioner qualifies as "medically needy" but was informed by HRA that he was ineligible to receive medical assistance until he incurred $113 in medical expenses, since this amount was found to constitute excess income. When a medically needy individual applies for medical assistance, his net available income is measured against a medically needy income standard established by DSS (see, 42 USC § 1396a [a] [10] [C] [i]; 42 CFR 435.812; Social Services Law § 366 [2] [a]; 18 NYCRR 352.8 [b] [3]; [c] [1] [ii]; 360-4.7 [b] [1]). New York regulations provide for a medically needy income standard equal to either the "medical assistance standard" or the "public assistance standard of need", whichever is greater. Net income is derived from gross income by deducting exempt income and allowable deductions (Social Services Law § 366 [2] [a] [7]; 18 NYCRR part 360-4). The $113 excess income figure for the petitioner was arrived at by deducting a $20 Medicare premium and health insurance premiums of $28.60 in 1990 and $29.90 in 1991, from his gross income, which consisted of his disability benefits. In 1990, these benefits totalled $982.60 and in 1991, they totalled $1,004.90 per month. From this net income of $934 a month in 1990 and $955 a month in 1991, was deducted the "public assistance standard of need", which, in July of 1990 was $821 and in July of 1991 was $842.

The petitioner then requested a fair hearing to challenge the respondent's calculations, based on his contention that they failed to reflect his actual financial condition, since they did not take into account the $800 monthly rent he paid in early 1990 and the $850 monthly rent he paid after August 1, 1990 to the facility where he lived. He further challenged the

respondent's computations on the ground that they failed to consider that the $113 "spend down" amount from his income left him without funds to attend to personal needs. He maintained that since a categorically needy person is guaranteed a personal needs allowance by statute, he, as a medically needy person, is entitled to the same benefit. After the hearing, DSS determined that the calculation of the petitioner's surplus income for medical assistance eligibility purposes was correct.

In his article 78 petition, the petitioner contended that the method of calculation was arbitrary and capricious since it was based on a fictional, fixed standard of need which failed to take into account his actual shelter expense and failed to provide an allowance for his personal needs. He further maintained that the computation violated his rights to due process and equal protection under the State and Federal Constitutions because of the disparate treatment received by the categorically needy and the medically needy. He therefore sought a declaration that the respondents violated his rights and an order directing them "to retroactively recalculate his eligibility for Medical Assistance, providing him with Medical Assistance from the first date of his eligibility forward based upon a computation of his net income which treats as surplus income available to meet medical expenses only Petitioner's net income after deduction of the payment actually made to the adult care facility in each month and the personal allowance provided in that month under Social Services Law § 131-o to SSI recipients residing in adult care facilities". The respondents cross-moved to dismiss the petition for failure to state a cause of action.

The Supreme Court found that the budgeting methodology and eligibility criteria as applied to the petitioner were unreasonable and granted the petition to the extent of remitting the matter to HRA for reconsideration of the petitioner's eligibility for medical assistance based on his actual expenses including documented expenses and medical bills DSS indicated should be used to offset excess income. The respondents' cross motion was denied.

Although "it cannot be said that, on its face, the * * * regulation, 'reflecting the choice made by the department * * * is "so lacking in reason for its promulgation that it is essentially arbitrary" ' " (Matter of Kelly v Bane, 192 AD2d 236, 242, quoting Matter of Bernstein v Toia, 43 NY2d 437, 448, quoting Matter of Marburg v Cole, 286 NY 202, 212), its application to the petitioner has created a result which is so

irrational as to warrant judicial intervention *(see, supra,* at 242; *see also, Matter of Johnson v Joy,* 48 NY2d 689).

Comparable treatment must be accorded categorically needy and medically needy medical assistance recipients (42 USC § 1396a [a] [10] [A], [C]). In addition, reasonable standards which shall be comparable for all groups must be applied to determine eligibility (42 USC § 1396a [a] [17] [B]; 42 CFR 435.812 [b]; *Calkins v Blum,* 511 F Supp 1073, 1091, *affd* 675 F2d 44). Pursuant to these Federal regulations, the Medicaid eligibility criteria for the medically needy may not be more restrictive than those for the categorically needy *(see, Caldwell v Blum,* 621 F2d 491, *cert denied* 452 US 909; *Greklek v Toia,* 565 F2d 1259, *cert denied sub nom. Blum v Toomey,* 436 US 962).

The respondents' contention that since medical assistance eligibility for a categorically needy person is based upon the same fictional assumption concerning rent as for a medically needy person, their methodology is consistent with Federal comparability requirements, must be rejected. The eligibility criteria for the medically needy petitioner are more restrictive than those for a categorically needy person. A personal needs allowance is required to be set aside from a categorically needy individual's fixed income which can neither be attached by the residential facility nor relinquished thereto by him or her (Social Services Law § 131-*o* [1], [2]; § 461-c [4]). As of January 1, 1991, the monthly personal allowance was "at least $90.00" (Social Services Law § 131-*o* [1] [b]). In 1990, by contrast, the respondents' calculations left the respondent with $21 for personal needs. In 1991, the amount was $8 short.

Although, as the respondents maintain, the result of computations for eligibility need only be equitable, not equal, and, although all medical assistance recipients need not be left in the same financial situation after computation of their budgets *(see, Calkins v Blum, supra),* the result reached in the petitioner's case by the respondents' calculations was not equitable and accorded disparate treatment to the medical needs of the categorically needy and the medically needy *(see, Aitchison v Berger,* 404 F Supp 1137, *affd* 538 F2d 307, *cert denied* 429 US 890). The standard of need for a categorically needy person is not $842 as the respondents allege, but rather, a charge for care and housing plus a personal needs allowance. The computations employed by the respondents require the petitioner to spend his income on medical care to a level below the amount of the personal needs allowance which

categorically needy recipients are permitted to retain before he is eligible for medical assistance.

The fact that the petitioner qualifies as medically needy demonstrates that he has insufficient resources to meet his medical needs. As stated by the Court of Appeals in *Matter of Sabot v Lavine* (42 NY2d 1068, 1068-1069): "It is, of course, reasonable and obvious to expect a person, applicant, recipient, or beneficiary, to utilize his own resources before receiving public assistance. But the broad humanitarian purpose of the Social Services Law does not contemplate that a person must be stripped bare, emotionally and economically * * * before applying for public assistance. * * * Any statute or regulation, but particularly social legislation, however broad, must be interpreted and enforced in a reasonable and humane manner in accordance with its manifest intent and purpose."

Although we agree with the Supreme Court's finding that the eligibility criteria, as applied to the petitioner were unreasonable, the order and judgment must be modified to vacate the directions to the respondents concerning the method for recalculating his eligibility. There is no statutory authority requiring the respondents to consider actual expenses in determining eligibility and consideration of such expenses may, in fact, present new comparability difficulties. Accordingly, the explicit directions for recalculating the petitioner's eligibility are vacated and the matter is remitted to the respondents for an eligibility determination consistent herewith. Concur—Sullivan, J. P., Carro, Rosenberger and Wallach, JJ.